[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9091
The defendant Stephen Milano is charged with five counts of criminal possession of a pistol or revolver, a Class D felony, in violation of Connecticut General Statutes § 53a-217c. The defendant has filed a motion to dismiss the charges "on the ground that the state cannot and does not allege that [the] defendant — who had a valid pistol permit — knew his conduct might violate the law and in the absence of such proof a conviction under the statute would be unconstitutional."
The court hereby grants the defendant's motion to dismiss, albeit on slightly different grounds. The court construes §53a-217c to require the state to prove beyond a reasonable doubt that the defendant knew or should have known that he was required to transfer or surrender his handguns within two business days after the issuance of the protective order against him. Because the state does not allege that the defendant knew or should have known of this requirement, there is insufficient evidence in this case to justify the continuing of the information or placing the defendant on trial. See Practice Book § 815(5).
After conducting an evidentiary hearing on the defendant's motion to dismiss, the court finds the following facts. Since 1988, the defendant has possessed a valid permit to carry a handgun. The permit was initially issued by the city of New Haven. The defendant subsequently obtained a gun permit from the state police. He possessed a valid permit to carry a handgun until it was seized by the New Haven police department on December 6, 1994.
On November 13, 1994, the defendant was arrested for allegedly assaulting his former wife, Wendy Milano, and charged with the crime of assault in the third degree. The defendant did not use, threaten to use, or display a handgun during this incident.
On November 14, 1994, while the defendant was present in court, a protective order was issued by the court against the defendant ordering him not to impose any restraint, threaten, assault or sexually assault Wendy Milano. Upon issuance of the protective order, the defendant was not informed by anyone, including the court or any court staff, that, as a result of the issuance of the protective order, he could no longer possess a CT Page 9092 pistol or revolver or that he was required to turn in any handguns in his possession to the state police. In addition, no one told the defendant at any time prior to his arrest on the subject charges that he could no longer possess a handgun or that he must transfer or surrender any handguns in his possession.
Subsequent to the issuance of the protective order against the defendant, Lieutenant Timothy Veno of the New Haven police department was contacted by Wendy Milano and told that the defendant owned handguns. Lieutenant Veno called the state police and learned that the defendant had a valid state permit to carry a handgun. Lieutenant Veno did not inform the state police that a protective order had been issued against the defendant. Lieutenant Veno also did not request that the state police revoke the defendant's gun permit. Lieutenant Veno decided to apply for a search warrant to determine if the defendant was in possession of any handguns. It took Lieutenant Veno approximately three weeks to assemble the information necessary to apply for and obtain a search warrant. At no time did Lieutenant Veno inform the defendant that he could not possess any handguns because of the protective order or that he must surrender any handguns in his possession.
The New Haven police department executed a search warrant of the defendant's residence on December 6, 1994. The defendant was home at the time and cooperated with the search. The New Haven police department found five handguns and seized the defendant's state gun permit. The defendant was arrested and charged with five counts of criminal possession of a pistol or revolver. On December 7, 1994, the New Haven police department sent a letter to the state police notifying them that the defendant had been arrested for being in possession of handguns while subject to a protective order and requesting a review of his suitability to hold a gun permit.
Although not a model of clarity, the defendant's motion to dismiss appears to assert two alternative grounds. First, the defendant claims that the statute, § 53a-217c, is unconstitutional because it does not require that the state prove that the defendant knew it was illegal to possess a handgun when subject to a restraining order. See Practice Book § 815(8). Second, the defendant claims in effect that insufficient evidence exists to justify continuing the information or placing the defendant on trial because the state has not alleged that it can prove the defendant had notice or reason to know that possession CT Page 9093 of a handgun was illegal. See Practice Book § 815(5).
The state asserts that § 53a-217c by its express terms does not require that the state prove the defendant knew it was illegal to possess a handgun after the issuance of a protective order. The state also claims that neither the Connecticut nor United States Constitutions require the invalidation of the statute as written.
It is a bedrock principle of criminal law that criminal intent or mens rea is required for a conviction of a criminal offense. "Actus non facit reum, nisi mens sit rea."[1] Mens rea was a necessary element for a crime under English common law and courts in the United States adopted this tradition. SeeMorissette v. United States, 342 U.S. 246, 250 72 S.CT. 240, 243,96 L.Ed. 288 (1952).
The principle that criminal punishment can only be imposed when an individual has intended to do wrong is as fundamental as it is long standing. "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Id. The Connecticut Supreme Court has similarly recognized mens rea as an essential requirement of both the common law and Anglo America criminal jurisprudence. SeeState v. Gabriel, 192 Conn. 405, 411 (1984) and State v.Nussenholtz, 76 Conn. 92, 95 (1903).
It is also well settled that the state may, if it so chooses, make an exception to the general rule requiring criminal intent for criminal liability. "Although prima facie and as a general rule there must be a mind at fault before there can be a crime, it is not an inflexible rule and a statute may relate to such a subject matter and may be so framed as to make an act criminal whether there has been any intention to break the law or otherwise to do wrong or not." State v. Nussenholtz, supra,76 Conn. 95 quoting Queen v. Tolson, L.R. 23 Q.B. Div. 168, 172. Whether a statute has eliminated the need for mens rea is a question of legislative intent. Id. at 96. See also State v. Sul,146 Conn. 78, 86 (1958) and State v. Husser, 161 Conn. 513, 515
(1971).
In determining legislative intent, the omission in the CT Page 9094 statute of words expressly declaring knowledge or intent as elements of the offense is not conclusive. See State v. Gaetano,96 Conn. 306, 315 (1921) and State v. Sul, supra, 146 Conn. 86. Courts are free to imply as a requirement of the statute that a person "knowingly" or "intentionally" committed the offense. SeeState v. Sul, supra, 146 Conn. 86-87. See also State v. Gaetano, supra, 96 Conn. 316 and State v. Nussenholtz, supra, 76 Conn. 94.
The elimination of the requirement of mens rea is such a fundamental departure from longstanding principles of criminal law that courts have demanded an indication of legislative will in that regard. See Staples v. U.S., 114 S.Ct. 1793, 1797 (1994). Courts are obliged to construe statutes to require criminal intent in the absence of a legislative intent to abolish mens rea for the particular offense at issue.
In State v. Gaetano, the Connecticut Supreme Court established the test for determining whether criminal intent is to be implied in a statutory offense where none is expressly provided. Courts must look to the "general scope of the act" and "the nature of the evils to be avoided" in deciding whether the legislature intended to eliminate mens rea from the crime's elements. State v. Gaetano, 96 Conn. 306, 316 (1921). See alsoState v. Kreminski, 178 Conn. 145, 149 (1979).
The statute at issue here, § 53a-217c, was enacted as part of a comprehensive revision of the statutes governing the sale, transfer and possession of pistols and revolvers. See Public Acts, Spec. Sess. July, No. 94-1 (hereinafter P.A. 94-1).Public Act 94-1 significantly tightened the requirements involved in the sale, transfer, purchase and receipt of handguns. For example, it added the requirement that no sale, delivery or other transfer of a handgun shall be made unless the transferee is personally known to the transferor or he provides a picture identification. P.A. 94-1, § 1(b). The act also imposed a new requirement that no person may purchase or receive any pistol or revolver unless the person holds a valid permit to carry a handgun, a valid permit to sell a handgun at retail or a valid eligibility certificate. P.A. 94-1, § 12(a).
Of particular importance to the case at hand, the Public Act also added new circumstances under which a person is disqualified from buying, receiving or possessing a pistol or revolver or from being issued or retaining a permit to carry a pistol or revolver. These new disqualifying events include the following: conviction CT Page 9095 of various specified misdemeanors; discharge from custody within the proceeding twenty years after having been found guilty of a crime by reason of mental disease or defect; confinement in a hospital for mental illness within the preceding twelve months by order of the probate court; and knowledge that a restraining or protective order has been issued by a court, after notice and an opportunity to be heard in a case involving the use, attempted use or threatened use of physical force against another person. Specifically, § 3 of P.A. 94-1 established § 53a-217c
which made it a Class D felony for a person to possess a pistol or revolver when he is subject to a disqualifying event.
Section 3 of Public Act No. 94-1 codified as § 53a-217c
provides, ill part, that "a person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver . . . and . . . knows that he is subject to a restraining or protective order issued by a court, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person. . . ." The nature of the evil to be avoided by this section is the possession of handguns by persons who are alleged to have exhibited or threatened physical violence and as a result are subject to court imposed restraining or protective orders. Through enactment of this statute, the General Assembly was quite simply endeavoring to keep handguns out of the hands of persons it felt might inappropriately use them.
The language and legislative history of the statute do not support the state's position that the General Assembly intended to eliminate the requirement of criminal intent when it enacted the statute. Although § 53a-217c does not explicitly contain language that a person "knowingly" or "intentionally" possess a handgun in violation of the statute, such an omission is not conclusive. See State v. Gaetano, supra, 96 Conn. 315 and Statev. Sul, supra, 146 Conn. 86. The wording of the statute does indicate a strong concern on the part of the legislature with notice and an individual's knowledge of the situation. The statute requires that a person "knows" he is subject to a restraining or protective order and that he be given notice and an opportunity to be heard. This language undercuts the state's claim that the legislature intended to enact a statute which imposes strict liability for an offense.
Moreover, there is nothing in the legislative history of P.A. CT Page 9096 94-1 which indicates the legislature wished to depart from the general rule that criminal intent is required for criminal liability. What little debate there is on the topic of mens rea in the legislative history of P.A. No. 94-1 contains strong evidence that the General Assembly did not intend to eliminate mens rea as an element of the offense.
During consideration of the bill in the House of Representatives, Representative Varese offered house amendment schedule "Q" which would have lowered the classification from a Class D felony to a Class A misdemeanor for violations of the act for any person "who does it not knowingly or intentionally" 37 H.R. Proc. Pt. 26, 1994 Sess., p. 9601. The amendment was rejected by a vote of 46-99. Id. p. 9608.
The argument against the amendment was not based on an expressed desire to eliminate criminal intent from the statute. Rather, one of the chief sponsors of P.A. 941, Representative Lawlor, spoke in opposition to the amendment because the bill already protected a person who unknowingly violated the act. Id., pp. 9607-9608. The act included a provision that allows a first time offender to have prosecution suspended and, if he successfully completes probation, eventually dismissed. SeeP.A. 94-1, § 1(h).[2] According to Representative Lawlor, this provision was written into the bill to protect "people who unknowingly violate the law. . . ." 37 H.R. Proc. Pt. 26, p. 9603. Therefore, while not directly on point, the legislative debate surrounding house amendment "Q" supports the proposition that the General Assembly in enacting Public Act 94-1 did not intend to eliminate criminal intent from its provisions.
The state argues in its brief that § 53a-217c is an example of the legislature exercising its police power in response to a serious hazard to public welfare — the potential for increased violence through the use of handguns in domestic abuse situations. Therefore, the legislature was more concerned with preserving public safety then with requiring personal blame in order to punish wrongdoing. The state asserts that the legislature intended to punish particular acts and "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." (State's response to defendant's motion to dismiss at 3 quoting Shevlin-CarpenterCompany v. Minnesota, 218 U.S. 57, 69-70.)
It is certainly true that the legislature has the authority CT Page 9097 to enact statutes which punish "public welfare" or "regulatory" offenses and which do not require the offender to know or intend the facts that make his conduct illegal. Morissette v.United States, supra, 342 U.S. 256. The statute at issue here, however, cannot appropriately be viewed as establishing such an offense.
Regulatory crimes or public welfare offenses typically involve violations in which the person who commits the violation "usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." Id. Similarly, in the various Connecticut cases in which the Connecticut Supreme Court has construed criminal statutes not to require criminal knowledge or intent, the offender was in a position to prevent the public danger with a minimum of care and responsibility and the effectiveness of the regulatory system established by the legislation would have been seriously undermined by a requirement of scienter.
In State v. Kinkead, 57 Conn. 173 (1888), the Connecticut Supreme Court held that the statute making it a crime for licensed persons to allow any minor to loiter on the premises where liquors are kept for sale did not require proof that the licensee knew the person loitering was a minor because the ages of persons who frequent such places was easily ascertained and the effectiveness of enforcement demanded it.
In State v. Gaetano, 96 Conn. 306 (1921), knowledge was not required under the statute imposing criminal penalties for keeping a house which is or is reputed to be a house of ill fame. The court emphasized that it was reasonable to require the keeper of the house to assume the risk of knowing the facts. Society could justifiably expect him to know or to find out whether prostitution was occurring at his house.
Finally, in State v. Kreminski, 178 Conn. 145 (1979), the court found mens rea was not necessary for a criminal conviction under Connecticut General Statutes § 36-344 which prohibits a registered salesman from selling securities except on behalf of the registered broker or dealer who employed him. The court stated that the regulatory legislation can punish a person unaware of their own wrongdoing and free of personal blame. Id. at 149-150. However, the court emphasized that the "touch stone" of whether criminal intent has been omitted from police regulatory or public welfare statutes is "the nature of the evils CT Page 9098 to be avoided and the extent of the probable frustration of the regulatory scheme which a requirement of scienter would create." [quotation marks omitted]. Id. at 150.
Moreover, while stating that personal blame on the part of the actor is not a necessary element of many offenses, the court still recognized that strict liability offenses were imposed in situations where the actor, at least in a general sense, "should have known better or exercised a greater degree of care." Id. In the situation before the court in Kreminski, the defendant certainly knew or should have known whether he was selling securities on behalf of the registered broker or dealer who employed him.
In the matter at hand, it cannot be said that the defendant should have known better or should have exercised a greater degree of care. It is also not the case that proof of knowledge or intent would impede the statute's efforts to avoid the targeted evils or would frustrate the regulatory scheme.
The defendant could not have reasonably been expected to know that the issuance of a protective order against him triggered an obligation on his part to transfer or surrender his handguns. No pistol or revolver was used by him or displayed by him during the incident involving his former wife. There is no connection of any sort between his possession of a handgun and the issuance of the protective order.
Rather, it was reasonable for him to expect that he would be notified of any requirement to turn in his handguns. He was licensed by the state police to carry a handgun. He was present in court when the protective order was issued. The New Haven police department was aware both that he had a protective order issued against him and that he possessed handguns. Yet neither the state police, the court, the New Haven police department nor anyone else informed him of any obligation to turn in his guns.
Moreover, the purpose underlying P.A. 94-1 and the nature of the evils it seeks to avoid do not mandate that an exception be made to the fundamental requirement of criminal intent. The stricter regulatory scheme established by the act to ensure that handguns are not placed in the hands of legislatively determined inappropriate persons would not be frustrated by a construction of § 53a-217c that mandates mens rea. Such an interpretation of the statute would require that persons with valid gun permits CT Page 9099 otherwise lawfully in possession of a handgun who are subject to a restraining or protective order may be found guilty of criminal possession of a pistol or revolver pursuant to § 53a-217c
provided they knew or should have known that they were required to transfer or surrender their handguns and they failed to do so. The state could easily give the appropriate notice in such situations.
Persons subject to restraining and protective orders are either before the court at the time the order is issued or they must be served with a copy of the order after it is issued. The state could notify affected persons that they must transfer or surrender any handguns at the time the order is issued or incorporate such language into the order itself.
The state police also have access to computerized listings of persons subject to restraining and protective orders and persons with valid gun permits. Notice of the provisions of § 53a-217c
could be given by mail to persons who are simultaneously on both lists.
In short, the state can ensure that persons subject to restraining or protective orders in cases involving the use, attempted use or threatened use of physical violence are not in possession of handguns by simply adding to the provisions of the protective order itself that a person subject to such an order may not possess a pistol or revolver and, if he is presently in possession of a handgun, he must transfer or surrender it within two business days.
The state's position that § 53a-217c establishes a strict liability offense, irrespective of knowledge or intent, is inconsistent with other provisions of P.A. 94-1. Section 6 states that any permit for the carrying of any pistol or revolver "shall be revoked by the authority issuing the same" upon the occurrence of any disqualifying event and the person whose permit is revoked shall be notified in writing. The requirement of revoking of a gun permit with notice to the holder is superfluous if an unknowing violation of § 53a-217c constitutes an offense. In addition, section 13 of P.A. 94-1 gives a person subject to a disqualifying event two business days to transfer or surrender his handguns. Providing a two day opportunity to give up one's weapons only makes sense if the person is to be notified or is otherwise aware of his obligation to do so. CT Page 9100
The argument raised by the defendant that § 53a-217c is unconstitutional pursuant to the United States Supreme Court decision in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240,2 L.Ed.2d 228 (1957), is another factor which counsels this court to interpret the statute as requiring criminal intent. Such a construction avoids a serious and substantial question as to the statute's constitutionality. See Crowell v. Benson, 285 U.S. 22,62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932) in which the court slated: "when the validity of an act of Congress is drawn in question and even if a serious doubt or constitutionality is raised, it is a cardinal principle that this court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."
It is a generally accepted presumption in statutory construction that the legislature intended to enact a constitutional statute. Cedar Island Improvement Association v.Clinton Electric Light and Power Company, 142 Conn. 359 (1955). "Whenever the constitutionality of a statute is challenged, we must attempt to find reasonable grounds upon which it can be upheld. We assume that the legislature intended to achieve a purpose by enactment that meets constitutional requirements." (citations omitted). Buttone v. Westport, 209 Conn. 652, 673
(1989).
The judicial desire to protect the constitutionality of statutes extends to interpretations of statutes not otherwise apparent on their face. See, e.g. State v. Indrisano, 228 Conn. 795
(1994). ". . . [W]here a statute reasonably admits to two constructions, one valid and the other invalid on the grounds of unconstitutionality, courts should adopt the construction which will uphold the statute even though that construction may not be the most obvious one." Adams v. Rubinow, 157 Conn. 150, 153
(1968). See also Engle v. Personnel Appeals Board, 175 Conn. 127
(1978).
In this case, the state advocates a reading of the statute that would impose a Class D felony, punishable by up to five years in prison, upon a person in possession of a handgun after issuance of a protective order against him who has a valid unrevoked permit to carry a handgun issued to him by the state police under circumstances where he has been given no notice that he must transfer or surrender his handguns and where there is no reason to believe that he knew or should have known of such a requirement. This construction of the statute raises a CT Page 9101 substantial question whether it violates the due process clause of the United States Constitution as interpreted by the United States Supreme Court in Lambert v. California.
In Lambert, the Supreme Court struck down a section of the municipal code of the City of Los Angeles which made it unlawful for a person previously convicted of a felony to be or remain in Los Angeles for a period of more than five days without registering. The court held that the ordinance violated the due process clause of the Fourteenth Amendment when it was applied to a person who had no actual knowledge of her duty to register and where no showing was made of the probability of such knowledge.[3] The court stated that while the legislature may exclude mens rea from the elements of an offense, the constitutional requirement of due process of law places some limits on this practice. Lambert v. California, supra, 355 U.S. 228.
Subsequent decisions have focused on the statement made inLambert that the defendant's conduct was "wholly passive" as the distinguishing characteristic which rendered the ordinance unconstitutional.[4] The conduct exhibited by the defendant here arguably meets that test. The defendant Stephen Milano is being punished without notice for the wholly passive conduct of failing to transfer or surrender his handguns just as the defendant in Lambert was punished for failing to register.
In this court's view, the most significant factor considered by the court in finding the statute unconstitutional in Lambert
was the complete lack of any circumstances which should have alerted the doer to the consequences of his deed. Lambert vCalifornia, supra, 355 U.S. 228. There was nothing that should have forewarned the defendant that she should register or at a minimum that she should inquire further. Similarly in this case, it cannot be said that the defendant should have been aware of his responsibilities had he exercised a minimum of degree of effort or care. No handgun was involved in the incident for which a protective order was issued, the state took no steps to revoke his gun permit and the State did not provide notice of the defendant's responsibilities to surrender his handguns despite numerous easy opportunities to do so.
Despite serious questions as to constitutionality of §53a-217c as applied to the facts of this case, I do not have to rule on the constitutionality of the statute. Where fairly possible, a statute should be construed to avoid substantial CT Page 9102 constitutional questions. U.S. v. X-Citement Video Inc.,130 L.Ed.2d 372, (1994). Section 53a-217c can and should be construed to require as an element of the offense that the defendant knew or should have known that he was required to transfer or surrender his handguns, thereby rendering unnecessary a decision on the statute's constitutionality.
Ample precedent exists for construing a statute to mandate criminal knowledge or intent where none is explicitly required. Beginning with State v. Nussenholtz, supra, 76 Conn. 94 and continuing through State v. Gaetano, supra, 96 Conn. 316 andState v. Husser, supra, 161 Conn. 513, the Connecticut Supreme Court has expressly stated that guilty knowledge or intent can be made an element of a crime by implication. In State v. Sul,146 Conn. 78 (1958), the court specifically interpreted a criminal statute to require knowledge even though the statute lacked such precise wording. The court held that the statute making it a crime for a person to have in his possession any book or pamphlet containing obscene, indecent or impure language or pictures requires proof of knowledge that the material is obscene.
The United States Supreme Court has also implied mens rea in statutes devoid of such language. In the landmark case ofMorissette v. United States, 2342 U.S. 246 (1952), the court read the requirement of criminal intent into a statute making it a crime to steal or convert government property valued at less than $100.
More recently, the court in a rapid succession of cases construed federal statutes silent on scienter to require knowledge as an element of the offense. See Posters `N `Things,Ltd. v. United States, 114 Supreme Court 1747 (1994) (government must establish for a conviction of the offense of selling drug paraphernalia through the mail that the defendant knew that the items were likely to be used with illegal drugs); Staples v.United States, 114 S.Ct. 1793 (1994) (government must prove that the defendant knew that his weapon possessed the characteristics that brought it within the statutory definition of a machine gun for a conviction of failing to properly register a machine gun) and U.S. v. X-Citement Video, Inc., 115 S.Ct. 464 (1994) (The Protection of Children Against Sexual Exploitation Act of 1977,18 U.S.C. § 2252, making it a crime to knowingly transport or ship in interstate or foreign commerce visual depictions of minors engaged in sexually explicit conduct, requires proof that the defendant knew that one of the performers was a minor at the CT Page 9103 time that the visual depiction was produced.)
For the reasons noted above, the court construes § 53a-217c
to require as an element of the offense of criminal possession of a pistol or revolver that the defendant knew or should have known that he was required to transfer or surrender his handgun within two business days of the protective order being issued against him.[5] Because the state does not allege in the information nor did it assert at the hearing on the motion to dismiss that there is any evidence to suggest that the defendant knew or should have known of his obligation to transfer or surrender his handguns, the case is hereby dismissed.
Jon M. Alander, Judge