## LAMBERT *v.* CALIFORNIA.

No. 47.  Argued April 3, 1957.—Restored to the docket for reargument June 3, 1957.—Reargued October 16–17, 1957.—Decided December 16, 1957.

*Samuel C. McMorris* argued and reargued the cause and filed a brief for appellant.

*Warren M. Christopher* reargued the cause, as *amicus curiae,* in support of the appellant, at the invitation of the Court, 354 U. S. 936, and also filed a brief.

*Philip E. Grey* argued and reargued the cause for appellee.  With him on the briefs was *Roger Arnebergh.*

*Clarence A. Linn,* Assistant Attorney General of California, reargued the cause and filed a brief for appellee pursuant to an invitation of the Court, 353 U. S. 979.  With him on the brief was *Edmund G. Brown,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Section 52.38 (a) of the Los Angeles Municipal Code defines "convicted person" as follows:

"Any person who, subsequent to January 1, 1921, has been or hereafter is convicted of an offense punishable as a felony in the State of California, or who has been or who is hereafter convicted of any offense in any place other than the State of California, which offense, if committed in the State of California, would have been punishable as a felony."

Section 52.39 provides that it shall be unlawful for "any convicted person" to be or remain in Los Angeles for a period of more than five days without registering; it requires any person having a place of abode outside the city to register if he comes into the city on five occasions or more during a 30-day period; and it prescribes the information to be furnished the Chief of Police on registering.

Section 52.43 (b) makes the failure to register a continuing offense, each day's failure constituting a separate offense.

Appellant, arrested on suspicion of another offense, was charged with a violation of this registration law.[*] The evidence showed that she had been at the time of her arrest a resident of Los Angeles for over seven years. Within that period she had been convicted in Los Angeles of the crime of forgery, an offense which California punishes as a felony. Though convicted of a crime punishable as a felony, she had not at the time of her arrest registered under the Municipal Code. At the trial, appel-

---

[*]For a recent comprehensive review of these registration laws see Note, 103 U. of Pa. L. Rev. 60 (1954).

lant asserted that § 52.39 of the Code denies her due process of law and other rights under the Federal Constitution, unnecessary to enumerate. The trial court denied this objection. The case was tried to a jury which found appellant guilty. The court fined her $250 and placed her on probation for three years. Appellant, renewing her constitutional objection, moved for arrest of judgment and a new trial. This motion was denied. On appeal the constitutionality of the Code was again challenged. The Appellate Department of the Superior Court affirmed the judgment, holding there was no merit to the claim that the ordinance was unconstitutional. The case is here on appeal. 28 U. S. C. § 1257 (2). We noted probable jurisdiction, 352 U. S. 914, and designated *amicus curiae* to appear in support of appellant. The case having been argued and reargued, we now hold that the registration provisions of the Code as sought to be applied here violate the Due Process requirement of the Fourteenth Amendment.

The registration provision, carrying criminal penalties, applies if a person has been convicted "of an offense punishable as a felony in the State of California" or, in case he has been convicted in another State, if the offense "would have been punishable as a felony" had it been committed in California. No element of willfulness is by terms included in the ordinance nor read into it by the California court as a condition necessary for a conviction.

We must assume that appellant had no actual knowledge of the requirement that she register under this ordinance, as she offered proof of this defense which was refused. The question is whether a registration act of this character violates due process where it is applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge.

We do not go with Blackstone in saying that "a vicious will" is necessary to constitute a crime, 4 Bl. Comm. *21, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. See *Chicago, B. & Q. R. Co. v. United States,* 220 U. S. 559, 578. But we deal here with conduct that is wholly passive—mere failure to register. It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed. Cf. *Shevlin-Carpenter Co. v. Minnesota,* 218 U. S. 57; *United States v. Balint,* 258 U. S. 250; *United States v. Dotterweich,* 320 U. S. 277, 284. The rule that "ignorance of the law will not excuse" (*Shevlin-Carpenter Co. v. Minnesota, supra,* p. 68) is deep in our law, as is the principle that of all the powers of local government, the police power is "one of the least limitable." *District of Columbia v. Brooke,* 214 U. S. 138, 149. On the other hand, due process places some limits on its exercise. Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. Recent cases illustrating the point are *Mullane v. Central Hanover Trust Co.,* 339 U. S. 306; *Covey v. Town of Somers,* 351 U. S. 141; *Walker v. Hutchinson City,* 352 U. S. 112. These cases involved only property interests in civil litigation. But the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

Registration laws are common and their range is wide. Cf. *Bryant* v. *Zimmerman,* 278 U. S. 63; *United States* v. *Harriss,* 347 U. S. 612; *United States* v. *Kahriger,* 345 U. S. 22. Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities. But the present ordinance is entirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained. Nevertheless, this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent. She could but suffer the consequences of the ordinance, namely, conviction with the imposition of heavy criminal penalties thereunder. We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, "A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear." *Id.,* at 50. Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently

with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.

*Reversed.*

MR. JUSTICE BURTON dissents because he believes that, as applied to this appellant, the ordinance does not violate her constitutional rights.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER join, dissenting.

The present laws of the United States and of the forty-eight States are thick with provisions that command that some things not be done and others be done, although persons convicted under such provisions may have had no awareness of what the law required or that what they did was wrongdoing. The body of decisions sustaining such legislation, including innumerable registration laws, is almost as voluminous as the legislation itself. The matter is summarized in *United States* v. *Balint,* 258 U. S. 250, 252: "Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.*"

Surely there can hardly be a difference as a matter of fairness, of hardship, or of justice, if one may invoke it, between the case of a person wholly innocent of wrongdoing, in the sense that he was not remotely conscious of violating any law, who is imprisoned for five years for conduct relating to narcotics, and the case of another person who is placed on probation for three years on condition that she pay $250, for failure, as a local resident, convicted under local law of a felony, to register under

a law passed as an exercise of the State's "police power." *
Considerations of hardship often lead courts, naturally
enough, to attribute to a statute the requirement of a
certain mental element—some consciousness of wrong-
doing and knowledge of the law's command—as a matter
of statutory construction. Then, too, a cruelly dispro-
portionate relation between what the law requires and
the sanction for its disobedience may constitute a viola-
tion of the Eighth Amendment as a cruel and unusual
punishment, and, in respect to the States, even offend
the Due Process Clause of the Fourteenth Amendment.

But what the Court here does is to draw a constitu-
tional line between a State's requirement of doing and
not doing. What is this but a return to Year Book dis-
tinctions between feasance and nonfeasance—a distinc-
tion that may have significance in the evolution of
common-law notions of liability, but is inadmissible as a
line between constitutionality and unconstitutionality.
One can be confident that Mr. Justice Holmes would have
been the last to draw such a line. What he wrote about
"blameworthiness" is worth quoting in its context:

> "It is not intended to deny that criminal liability,
> as well as civil, is founded on blameworthiness. Such
> a denial would shock the moral sense of any civilized
> community; or, to put it another way, a law which
> punished conduct which would not be blameworthy
> in the average member of the community would be
> too severe for that community to bear." (This pas-

---

*This case does not involve a person who, convicted of a crime in
another jurisdiction, must decide whether he has been convicted of a
crime that "would have been punishable as a felony" had it been
committed in California. Appellant committed forgery in California,
and was convicted under California law. Furthermore, she was con-
victed in Los Angeles itself, and there she resided for over seven
years before the arrest leading to the present proceedings.

232

sage must be read in the setting of the broader discussion of which it is an essential part. Holmes, The Common Law, at 49–50.)

If the generalization that underlies, and alone can justify, this decision were to be given its relevant scope, a whole volume of the United States Reports would be required to document in detail the legislation in this country that would fall or be impaired. I abstain from entering upon a consideration of such legislation, and adjudications upon it, because I feel confident that the present decision will turn out to be an isolated deviation from the strong current of precedents—a derelict on the waters of the law. Accordingly, I content myself with dissenting.