UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary HANCOCK, Defendant–Appellant.

No. 99–10533.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Oct. 26, 2000

Jane L. McClellan, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant–appellant.

Frederick A. Battista, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff–appellee.

Before: ALDISERT,[1] GRABER, and FISHER, Circuit Judges.

GRABER, Circuit Judge:

Defendant Gary Hancock was convicted of violating 18 U.S.C. § 922(g)(9), which prohibits persons who have been convicted of "misdemeanor crime[s] of domestic violence" from possessing firearms. He appeals the district court's denial of his motion to dismiss the indictment on due process and equal protection grounds and the district court's refusal, at trial, to give two of his requested jury instructions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1994 and 1995, Defendant was convicted of four state misdemeanors involving violence or threats of violence against his wife, Patricia Hancock: Assault (Domestic Violence), Disorderly Conduct (Domestic Violence), Threatening and Intimidating (Domestic Violence), and Obstruction of Judicial Proceedings. Defendant received fines and probation for those convictions. Defendant and his wife later divorced.

On July 6, 1998, Patricia Hancock obtained an order of protection against Defendant in Flagstaff Municipal Court.[2] That order specified that Defendant was not permitted to possess firearms. A Flagstaff deputy sheriff served Defendant with a copy of the order on July 9, while he was at work, and informed him that he was required to give any firearms in his possession to the Flagstaff police by the end of the day. When Defendant returned home from work, he telephoned the Flag-staff Police Department to arrange the surrender of his firearms. The department sent two officers to Defendant's house, and the officers removed 12 firearms from the house.

On September 27, 1998, the government filed a complaint charging Defendant with violating 18 U.S.C. § 922(g)(9). The government later obtained a one-count indictment alleging violation of that statute. Defendant entered a plea of not guilty.

On January 15, 1999, Defendant filed a Motion to Dismiss Indictment Based on Unconstitutionality of Statute. In that motion, he argued that 18 U.S.C. § 922(g)(9) violates constitutional guarantees of due process and equal protection. After hearings and briefing, the district court denied the motion.

On June 3, 1999, the government obtained a superseding indictment, which charged the same offense as the original indictment. Defendant again pleaded not guilty.

Before trial, Defendant submitted proposed jury instructions, including an instruction concerning the defense of entrapment by estoppel and an instruction concerning the elements of the charged offense. The district court refused to give an instruction on entrapment by estoppel and gave the government's, rather than Defendant's, requested instruction on the elements of the offense.

At trial, the parties stipulated that Defendant had been convicted of a misdemeanor crime of violence within the meaning of 18 U.S.C. § 922(g)(9). After a two-day trial, the jury found Defendant guilty. At sentencing, the district court departed downward, on the ground that Defendant had possessed the firearms solely for sporting or collection purposes, and sentenced Defendant to five years' probation. Defendant timely appealed.

---

1. The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

2. The record does not disclose the circumstances surrounding issuance of the protective order.

## II. STANDARD OF REVIEW

We review de novo a district court's denial of a motion to dismiss based on a violation of constitutional rights. *See United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir.), *cert. denied*, 528 U.S. 919, 120 S.Ct. 279, 145 L.Ed.2d 234 (1999). Whether a jury instruction misstates the elements of a statutory crime is a question of law that we review de novo. *See United States v. Frega*, 179 F.3d 793, 806 n. 16 (9th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000). We also review de novo a district court's refusal to give an entrapment-by-estoppel instruction. *See United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir.1991).

## III. DISCUSSION

Defendant argues that the district court erred in refusing to dismiss the indictment on equal protection and due process grounds. He also argues that the court erred in refusing to give two of his requested jury instructions. Defendant's argument about the first of those requested instructions—concerning the elements of the offense—is intertwined with his due process argument, so we will discuss those arguments together.

A. *The district court did not err in denying Defendant's motion to dismiss or in denying his request for a jury instruction on knowledge of the law.*

Defendant was convicted of violating 18 U.S.C. § 922(g)(9), which makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess any firearm. The mental-state requirement for 18 U.S.C. § 922(g)(9) is "knowingly." *See* 18 U.S.C. § 924(a)(2). This court already has held that the requirement of knowledge in 18 U.S.C. § 924(a) refers only to knowledge of possession: To obtain a conviction, the government must prove that a defendant "[knew] that he possessed the firearm." *United States v. Miller*, 105

F.3d 552, 555 (9th Cir.1997); *see also Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (to the same effect).

Defendant concedes that he was convicted of "misdemeanor crime[s] of domestic violence" in 1994 and 1995, that he possessed the 12 firearms for which he was prosecuted, and that he knew that he possessed those firearms. However, he argues that 18 U.S.C. § 922(g)(9) is unconstitutional as applied to him.

### 1. *Due Process*

Defendant bought the 12 firearms in question between 1980 and 1982. In 1994 and 1995, when Defendant was amassing misdemeanor domestic violence convictions, persons with such convictions were not prohibited by federal law from owning firearms.

In 1996, Congress amended the Gun Control Act of 1968 by adding, among other things, 18 U.S.C. § 922(g)(9). The effective date of that statute was September 30, 1996. Defendant asserts—and the government does not dispute—that he was unaware of 18 U.S.C. § 922(g)(9) until he was arrested for violating it. On appeal, he argues that 18 U.S.C. § 922(g)(9) violates the Due Process Clause of the Fifth Amendment when it is applied to him, because his indictment is based on possession of firearms that were purchased, and convictions for misdemeanors that were committed, before the statute's effective date, and because he did not learn of the statute until he was charged with violating it.

"The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). The common-law rule that every person is presumed to know the law "has been applied by the Court in numerous cases construing criminal statutes." *Id.* (citations omitted).

The rule "results from the extreme difficulty of ascertaining what is, *bona fide*, the interpretation of the party; and the extreme danger of allowing such excuses to be set up for illegal acts, to the detriment of the public." *Barlow v. United States,* 32 U.S. (7 Pet.) 404, 411, 8 L.Ed. 728 (1833). For "there would be perpetual temptations to violations of the law, if men were not put upon extreme vigilance to avoid them." *Id.*

Defendant argues, however, that his case is an exception to that general rule. His argument combines two distinct challenges to this prosecution, which we will address separately. *First,* he argues that the government was, in fact, required to prove that he had actual knowledge of the requirements of 18 U.S.C. § 922(g)(9). *Alternatively,* he argues that, if the government was *not* required to prove actual knowledge of the statute, then 18 U.S.C. § 922(g)(9) violates due process as applied to him.

### a. *Mental State Under 18 U.S.C. § 922(g)(9)*

■ We turn first to Defendant's argument that the government had to prove that he knew that the statute prohibited him from possessing firearms. This argument also encompasses Defendant's first argument about jury instructions, in which he contends that the district court erred by refusing to give an instruction stating that the government had to prove that, "at the time defendant possessed the ... firearms, *he knew that it was illegal* for him

to possess firearms because he had a misdemeanor conviction for domestic violence." (Emphasis added.)

In support of this argument, Defendant quotes *Bryan* for the proposition that, in cases involving "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct," the Court may " 'carv[e] out an exception to the traditional rule' that ignorance of the law is no excuse." 524 U.S. at 194–95, 118 S.Ct. 1939 (quoting *Cheek,* 498 U.S. at 200, 111 S.Ct. 604). However, the cases to which *Bryan* refers are cases in which the Supreme Court read the element of "actual knowledge of the law" into complex statutes that punished "*willful*" failures to perform statutory duties. *See Ratzlaf v. United States,* 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (reading requirement of actual knowledge of legal duty into statute that punished "willfully" structuring financial transactions to avoid federal reporting requirements); *Cheek,* 498 U.S. at 201, 111 S.Ct. 604 (in prosecution for "willfully" failing to file income tax returns, stating that "the standard for the statutory willfulness requirement is the voluntary, intentional violation of a known legal duty" (internal quotation marks omitted)). Here, the statute is not "highly technical"[3] and the mental state is not "willful."

As noted, the mental state for prosecutions under 18 U.S.C. § 922(g)(9) is the lesser standard, "knowing." *See* 18 U.S.C. § 924(a)(2). Both the Supreme Court and

---

**3.** Defendant cites cases involving "highly technical" statutes, but does not argue in any detail that 18 U.S.C. § 922(g)(9) is such a statute. Rather, the thrust of his argument is that the statute is "obscure," a point that we will consider in text, below. To the extent that Defendant has raised the argument, we conclude that the statute is not "highly technical" as that phrase is used in *Cheek* and *Ratzlaf.* Those cases involved tax and banking statutes that were difficult to understand and comply with, even for parties who knew of their existence and were attempting in good faith to follow their requirements. *See Cheek,* 498 U.S. at 199–200, 111 S.Ct. 604.

By contrast, 18 U.S.C. § 922(g)(9) is straightforward; it simply prohibits persons with misdemeanor convictions involving domestic violence from possessing firearms. Defendant does not argue that he was unable to understand 18 U.S.C. § 922(g)(9) as a whole, or that any particular term in the statute confused him, or that his failure to comply was the result of a good-faith misunderstanding about what the statute meant. Rather, he simply was ignorant of the statute's existence, which ignorance was not attributable to any "highly technical" feature of 18 U.S.C. § 922(g)(9).

this court have held that the requirement of "knowing" conduct refers to knowledge of possession, rather than knowledge of the legal consequences of possession. *See Bryan*, 524 U.S. at 193, 118 S.Ct. 1939; *United States v. Kafka*, 222 F.3d 1129, 1131 (9th Cir.2000); *Miller*, 105 F.3d at 555. Defendant asks us, in effect, to overrule those cases by importing the heightened standard of actual knowledge of the law from *Cheek*, *Ratzlaf*, and other cases involving "willful" violations of complex statutes. We are bound by our prior cases, however, and may not adopt Defendant's suggestion.

This court previously has noted the distinction between the requirements of "willful" and "knowing" behavior and has declined to import the *Cheek/Ratzlaf* requirement of actual knowledge of law into a statute that punished "knowing" behavior, even when the statute arguably is "highly technical." *See United States v. Pasillas–Gaytan*, 192 F.3d 864, 867–68 (9th Cir.1999). In that case, the defendant was convicted of knowingly attempting to procure naturalization contrary to law. On appeal, he argued "that the government had to prove that he knew that applying for naturalization with [a] prior conviction was illegal." *Id.* at 867. In rejecting that argument, this court declined to extend the reasoning from *Ratzlaf*: "Because [18 U.S.C.] § 1425 requires only 'knowing' conduct, rather than imposing the stricter 'willful' requirement, we hold that [the defendant] did not have to know that procuring naturalization was a criminal act." *Id.* at 868.

■ Consistent with *Pasillas–Gaytan*, we decline to read the element of actual knowledge of the statute into 18 U.S.C. § 922(g)(9). Our holding also disposes of Defendant's first jury-instruction argument. Because Defendant's requested instruction did not accurately set out the mental state required for prosecution under 18 U.S.C. § 922(g)(9), the district court did not err in refusing to give it.

b. *Conduct Under 18 U.S.C. § 922(g)(9)*

■ Alternatively, Defendant argues that, if the government was *not* required to prove that he actually knew about 18 U.S.C. § 922(g)(9), then the statute violates due process as applied to him. Specifically, he argues that his case falls within the exception to the rule that "ignorance of the law is no excuse" created by *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

In *Lambert*, the defendant was convicted under a provision of the Los Angeles Municipal Code that made it unlawful for convicted felons to be or remain in the city for more than five days without having registered with the police. The defendant, a convicted felon, was unaware that she was required to register and had lived in Los Angeles for seven years without doing so. She was arrested on another matter and ultimately was convicted of failing to register. *See id.* at 226, 78 S.Ct. 240.

The Supreme Court reversed her conviction. *See id.* at 227, 78 S.Ct. 240. The Court reasoned that the defendant's failure to register was "wholly passive" and "unaccompanied by any activity whatever, mere presence in the city being the test." *Id.* at 228–29, 78 S.Ct. 240. Her omission to act was, therefore, "unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." *Id.* at 228, 78 S.Ct. 240. In these circumstances, the Court held, the defendant could "not be convicted consistently with due process" without notice of the registration requirement. *Id.* at 229–30, 78 S.Ct. 240.

Defendant argues that his conviction violates due process under *Lambert*, because he had no knowledge that his possession of firearms was illegal. The Sixth Circuit recently rejected that very argument in an appeal of a conviction under 18 U.S.C. § 922(g)(9). *See United States v. Beavers*, 206 F.3d 706, 710 (6th Cir.2000). In addition, this circuit and four other circuits have rejected the argument in appeals un-

der 18 U.S.C. § 922(g)(8), which prohibits possession of firearms by persons who are under domestic-violence restraining orders. *See Kafka,* 222 F.3d at 1133; *United States v. Reddick,* 203 F.3d 767, 771 (10th Cir.2000); *United States v. Meade,* 175 F.3d 215, 226 (1st Cir.1999); *United States v. Bostic,* 168 F.3d 718, 723 (4th Cir.1999); *United States v. Wilson,* 159 F.3d 280, 288–89 (7th Cir.1998). To date, no circuit court has embraced Defendant's argument.

We will not be the first. The *Lambert* exception is narrow; the Supreme Court "has steadfastly resisted efforts to extend [its] reach." *Meade,* 175 F.3d at 225; *see also Texaco, Inc. v. Short,* 454 U.S. 516, 537 n. 33, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (stating that *Lambert*'s "application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents—a derelict on the waters of the law.' " (quoting *Lambert,* 355 U.S. at 232, 78 S.Ct. 240 (Frankfurter, J., dissenting))). And here, the *Lambert* exception is materially distinguishable on two bases.

First, *Lambert* addressed a prosecution for a failure to register, which was "wholly passive" and "unlike the commission of acts." 355 U.S. at 228–29, 78 S.Ct. 240. This circuit has refused to extend *Lambert* to situations that involved any element of "active"—as distinct from "merely passive"—behavior. *See, e.g., United States v. Indelicato,* 800 F.2d 1482, 1484 (9th Cir.1986); *United States v. Allen,* 699 F.2d 453, 458 (9th Cir.1982); *Reyes v. United States,* 258 F.2d 774, 785 (9th Cir.1958). Relevant to this case, this court has held that possession of firearms is "active" conduct, as distinct from the "wholly passive" failure to register that was at issue in *Lambert.*

*Indelicato* and *Allen* are especially instructive, because both involved prosecutions for illegal possession of firearms. In *Indelicato,* the defendant argued that 18 U.S.C. § 922(h)(1) (1982), which prohibited the possession of firearms by persons under indictment, was unconstitutional under *Lambert.* This court rejected that argument, stating that "the statute in *Lambert* criminalized felons' failure to register, while section 922(h)(1) criminalizes possession of a gun—*an active and potentially dangerous act.*" *Indelicato,* 800 F.2d at 1484 (emphasis added).

In *Allen,* the defendant was prosecuted under the federal felon-in-possession statute. *See* 699 F.2d at 455. He argued that, because his right to possess firearms had been restored under state law, he had no notice of the possibility that he might be prosecuted under federal law and, accordingly, his prosecution violated *Lambert.* In rejecting that argument, this court emphasized that the felon-in-possession statute "*does not involve merely passive conduct:* to violate the law one must knowingly possess a firearm." *Id.* at 458 (emphasis added). Thus, this court has distinguished the act of knowingly possessing a firearm from the "wholly passive" failure to register as an ex-felon that was at issue in *Lambert.*

Second, Defendant's history of domestic violence and continued gun ownership "make[ ] this case distinguishable from *Lambert* where the 'circumstances which might move one to inquire as to the necessity of registration [were] completely lacking.' " *Kafka,* 222 F.3d at 1133 (quoting *Lambert,* 355 U.S. at 229, 78 S.Ct. 240). By owning firearms, Defendant knowingly subjected himself to a host of state and federal regulations; and, by "committ[ing] the domestic violence offense, he 'removed himself from the class of ordinary and innocent citizens' who would expect no special restrictions on the possession of a firearm." *Beavers,* 206 F.3d at 710 (quoting *Bostic,* 168 F.3d at 722). The defendant in *Lambert* had *no* reason to know, or even to attempt to discover, that she was required to register in order to continue the everyday act of living in Los Angeles. But Defendant, as a violent offender who owned several firearms, had at least some

reason to know that his behavior might, in the future, be subject to additional regulation relating to such weapons.

In sum, we conclude, consistent with *Beavers* and *Kafka*, that Defendant does not fall within the *Lambert* exception to the rule that "ignorance of law is no excuse."

### c. *Publication of the Enactment of 18 U.S.C. § 922(g)(9)*

■■■ When Defendant was charged, 18 U.S.C. § 922(g)(9) had been in effect for two years.[4] As a general proposition, Congress is not required to inform citizens individually of a change in the law: To provide constitutionally adequate notice, "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco,* 454 U.S. at 532, 102 S.Ct. 781. Title 18 U.S.C. § 922(g)(9) was enacted and published in the normal course.

■■■ Defendant suggested at oral argument that due process requires some quantum of additional publicity to inform citizens of the enactment of a criminal statute, at least when a defendant is the first in a particular judicial district to go to trial under a new criminal statute. (See also note 3, above.) We find no authority for that proposition. Even if there were such a requirement, however, this statute would satisfy it. Title 18 U.S.C. § 922(g)(9) received extensive publicity in newspapers across the nation, including in Defendant's home state of Arizona, both before and after its passage. *See, e.g., Spousal–Abuse Conviction Could Disarm Police,* Ariz. Repub., Dec. 6, 1996, at A30; *Clinton Fires Back at Dole with 4–Point,*

*Anti–Crime Plan,* Phoenix Gazette, Aug. 27, 1996, at D2; *Push to Disarm Abusers Ties Up Anti–Stalking Bill: Gun–Ban Proposal Puts Heat on GOP,* Ariz. Repub., July 22, 1996, at A5; *Clinton: Ban Gun Sales to Those Convicted of Domestic Violence,* USA Today, August 27, 1996, at 7A; *Senate Votes to Extend Gun Curbs—Congress: Bill to Widen Ban to Those Guilty of Misdemeanor Domestic Violence Passes, 97–2,* L.A. Times, Sept. 13, 1996, at A22; *Police Up in Arms Over Revised Federal Gun Law,* Christian Sci. Monitor, Dec. 18, 1996, at 4; *Law's Omission Disarms Some Police: Domestic Violence Act Has Some Officers Hanging Up their Guns,* Wash. Post, Dec. 27, 1996, at A16.

In summary, we hold that the district court did not err in refusing to dismiss the indictment on due process grounds.

### 2. *Equal Protection*

Defendant also argues that the district court erred in refusing to dismiss the indictment on equal protection grounds.

■■■ As a threshold matter, Defendant contends that 18 U.S.C. § 922(g)(9) is subject to strict scrutiny. A law is subject to strict scrutiny if it targets a suspect class or burdens the exercise of a fundamental right. *See Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Defendant concedes that he is not a member of a suspect class, but argues that 18 U.S.C. § 922(g)(9) burdens his fundamental right to bear arms under the Second Amendment.

■■■ However, this court has concluded that "the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private

---

4. In cases involving property rights, the Supreme Court has suggested that due process may require a " 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it." *Atkins v. Parker,* 472 U.S. 115, 130, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (quoting *Texaco,* 454 U.S. at 532, 102 S.Ct. 781); *see also United States*

*v. Locke,* 471 U.S. 84, 108, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). We need not decide what grace period, if any, would be required under 18 U.S.C. § 922(g)(9) because, in any event, the two-year period between the statute's effective date and the charge in this case gave Defendant an adequate opportunity to become familiar with his obligations under the law.

citizen." *Hickman v. Block,* 81 F.3d 98, 101 (9th Cir.1996) (citing *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)). Defendant acknowledges *Hickman,* but argues that it is wrongly decided, stating that "[t]he Ninth Circuit, and many other circuits, have misinterpreted *Miller.*" Notwithstanding Defendant's argument, *Hickman* is the law of this circuit and disposes of Defendant's argument that the Second Amendment confers on individual citizens a fundamental right to bear arms. Accordingly, 18 U.S.C. § 922(g)(9) does not burden the exercise of a fundamental right, and we review Defendant's equal protection claim under the rational-basis standard.

 That standard is highly deferential: "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller,* 509 U.S. at 319, 113 S.Ct. 2637 (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). "Therefore, 'a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity' and must be upheld 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Aleman v. Glickman,* 217 F.3d 1191, 1200 (9th Cir.2000) (quoting *Heller,* 509 U.S. at 319–20, 113 S.Ct. 2637). In defending a statute on rational-basis review, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification"; rather, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller,* 509 U.S. at 320, 113 S.Ct. 2637.

 Defendant argues that 18 U.S.C. § 922(g)(9) fails even that deferential standard, because it has the potential to treat some misdemeanants more harshly than it treats some felons. His argument proceeds as follows: (1) The federal felon-in-possession statute does not apply to "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored ... unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ... possess ... firearms," 18 U.S.C. § 921(a)(20); (2) the statute under which Defendant was prosecuted, 18 U.S.C. § 922(g)(9), also does not apply to a conviction that has been "expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ... possess ... firearms," 18 U.S.C. § 921(a)(33)(B)(ii); (3) in Arizona, misdemeanants do not lose their civil rights and, accordingly, may not have those rights "restored"; (4) but Arizona's felons *do* lose their civil rights and, accordingly *may* have those rights "restored"; (5) so it is possible that an Arizona domestic-violence *felon* might have his civil rights restored and, therefore, be allowed to own a gun; (6) but that possibility does not exist for Arizona's domestic-violence *misdemeanants;* (7) therefore, 18 U.S.C. § 922(g)(9) might treat some misdemeanants more harshly than the federal felon-in-possession statute treats some felons; and (8) there is no conceivable rational basis for that disparity in treatment.

The only circuit court to consider that precise argument has rejected it. *See United States v. Smith,* 171 F.3d 617, 626 (8th Cir.1999).[5] In *Smith,* the Eighth Circuit noted that Congress was aware of the discrepancies in state procedures for re-

---

5. Several circuit courts have rejected similar equal-protection challenges to other provisions of the federal firearm statutes. *See United States v. Baker,* 197 F.3d 211 (6th Cir.1999); *United States v. Lewitzke,* 176 F.3d 1022 (7th Cir.1999); *Fraternal Order of Police v. United States,* 173 F.3d 898 (D.C.Cir.), *cert. denied,* 528 U.S. 928, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999). No circuit court has embraced Defendant's argument.

voking and restoring civil rights. The court wrote that disparate treatment of some offenders was the inevitable result of Congress' decision to "look to state law to define the restoration exception." *Id.* at 625. The court further noted that restoration was only one of several procedures— pardon, expungement, and setting aside of convictions being the others—through which an offender could regain the right to possess firearms. *See id.* The court concluded that (1) it was "entirely rational" for Congress to extend the firearm ban to domestic-violence misdemeanants; (2) the discrepancy in treatment of which the defendant complained was the inevitable result of Congress' reference to state law; and (3) because the statute contained other means for misdemeanants to regain the right to possess firearms, it did not violate equal protection. *See id.* at 626.

The Eighth Circuit's opinion in *Smith* is persuasive. For the reasons that the *Smith* court gave, we reject Defendant's equal protection argument. Defendant had, and has, several adequate legal mechanisms at his disposal for regaining his right to possess firearms: pardon, expungement, and setting aside of convictions. "Restoration of civil rights" is not one of those mechanisms, as it might be for some felons. But that minor distinction between felons and misdemeanants is not sufficient to constitute a violation of equal protection.

Even if it were sufficient, the distinction is at least minimally rational. Congress reasonably could conclude that felons who had been through a state's restoration process and had regained their civil rights (without any restriction on their possession of firearms) were more fit to own firearms than domestic-violence misdemeanants who had not had their convictions expunged or been pardoned. Reasonable people might argue whether that distinction is good public policy; but it is not irrational.

In conclusion, the district court did not err in denying Defendant's motion to dis-

miss the indictment on equal protection grounds.

**B.** *Defendant was not entitled to an instruction on entrapment by estoppel.*

Defendant makes two arguments concerning jury instructions. The first, which relates to actual notice of the existence and terms of 18 U.S.C. § 922(g)(9), is addressed above. The other relates to the proposed defense of entrapment by estoppel.

 The entrapment-by-estoppel-defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official. *See United States v. Tallmadge,* 829 F.2d 767, 773 (9th Cir. 1987). It is not sufficient that the government official's comments were vague or even contradictory; rather, the defendant must show "that the government affirmatively told him the proscribed conduct was permissible, and that he reasonably relied on the government's statement." *United States v. Ramirez–Valencia,* 202 F.3d 1106, 1109 (9th Cir.2000). To invoke entrapment by estoppel, a defendant must demonstrate "affirmative misleading" on the part of a government official. *Brebner,* 951 F.2d at 1026.

 Defendant's argument is that, when he bought firearms between 1980 and 1982, neither the federal forms that he was required to complete nor the federally licensed gun dealers from whom he purchased firearms informed him that domestic-violence misdemeanants could not own firearms. Of course, domestic-violence misdemeanants *could* own firearms at the time Defendant purchased the firearms. Moreover, Defendant had not yet committed any misdemeanors involving domestic violence. Nevertheless, he argues that the district court should have given his entrapment-by-estoppel instruction.

 That argument is unpersuasive. Entrapment by estoppel applies in cases of

"affirmative misleading" by governmental officials. Although Defendant is correct that a licensed gun dealer may be considered to be a government official for purposes of this defense, *see Tallmadge,* 829 F.2d at 774, he cannot show any "misleading" or misstatement on the part of any government official. Defendant was correctly informed of the state of the law when he purchased the firearms. He did not ask, and was not told, whether the law might change 15 years in the future; nor did he ask how his legal status might change were he to commit domestic-violence misdemeanors. The government cannot be estopped from prosecuting Defendant on the ground that it correctly told him the law in 1982, but failed at that time to inform him of the possibility that he could be exposed to prosecution in 1998 under a 1996 law because of conduct in 1994 and 1995. On these facts, Defendant's entrapment-by-estoppel defense fails as a matter of law, and Defendant was not entitled to a jury instruction concerning that defense.

AFFIRMED.