**UNITED STATES of America,**

**v.**

**Troy MILHERON, Defendant**

**No. 02–CR–26–B–S.**

United States District Court, D. Maine.

Nov. 20, 2002.

Christopher D. Smith, Esq., Bangor, for Troy Milheron, defendant.

Daniel J. Perry, Esq., U.S. Attorney's Office, Bangor, for United States of America.

### ORDER DENYING MOTION TO DISMISS

SINGAL, District Judge.

Presently before the Court is Defendant Troy Milheron's Motion to Dismiss (Docket # 8) an Indictment against him for possessing a firearm after having been committed to a mental institution in violation of 18 U.S.C. § 922(g)(4) (Docket # 4). Defendant argues that the statute infringes upon the right to bear arms under the Second Amendment to the United States Constitution without providing sufficient due process of law. For the following reasons, the Court DENIES Defendant's motion.

## I. BACKGROUND

Section 922(g)(4) of the Gun Control Act of 1968 criminalizes knowing possession of any firearm or ammunition in or affecting commerce by a person "who has been adjudicated as a mental defective or who has been committed to a mental institution." 18 U.S.C. § 922(g)(4) (2000); 18 U.S.C. § 924(a)(2) (2000). An individual committed to a mental institution or adjudicated as a mental defective may obtain relief from the criminal disability imposed under 922(g)(4) by showing to the Secretary of the Treasury that the "applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c) (2000). The section further provides for judicial review of any denial of relief by the Secretary. *Id.*

Defendant was twice involuntarily committed to a mental institution pursuant to Maine's emergency hospitalization statute, 34–B M.R.S.A. § 3863 (Supp.2001), on February 27, 2001 and January 20, 2002, implicating section 922(g)(4). On February 22, 2002, a rifle and ammunition were found in Defendant's residence during the execution of a search warrant, resulting in the present action.

## II. DISCUSSION

Although a number of decisions have addressed the statute's failure to define "commitment," *see, e.g., United States v. Midgett,* 198 F.3d 143 (4th Cir.1999), *United States v. Chamberlain,* 159 F.3d 656 (1st Cir.1998), *United States v. Waters,* 23 F.3d 29 (2d Cir.1994), no court has squarely addressed the potential due process concerns arising from section

922(g)(4). To establish a procedural due process violation, a constitutionally protected freedom or liberty interest must be infringed without adequate procedural safeguards. *See Lehr v. Robertson,* 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

Defendant relies on *United States v. Emerson,* 270 F.3d 203 (5th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002), to assert that he has an individual right to bear arms under the Second Amendment. He then argues that he may not be deprived of this right on the basis of his mental illness without constitutionally sufficient notice.[1] However, Defendant also has a general Fifth Amendment right to notice of the criminal conduct proscribed under section 922(g)(4). *See United States v. Hutzell,* 217 F.3d 966, 968 (8th Cir.2000), *cert. denied,* 532 U.S. 944, 121 S.Ct. 1408, 149 L.Ed.2d 349 (2001). Thus, the Court assumes that Defendant asserts his general Fifth Amendment right to procedural due process in addition to his Second Amendment rights. Accordingly, the Court first addresses Defendant's right to bear arms and then considers his due process concerns.

## A. Right to Bear Arms

■ Only the Fifth Circuit Court of Appeals has held that the Second Amendment imparts an individual right to keep and bear arms.[2] *Emerson,* 270 F.3d at 232. All other Circuits to face the question have interpreted the Supreme Court's decision in *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), to endorse a collective right to bear arms, linked to the preservation of a well-regulated militia. *See Emerson,* 270 F.3d at 218–220 (collecting cases). In keeping with the majority trend, the First Circuit has held that the right to keep and bear arms is not generally conferred upon the people, but instead protects only the right to possess weapons with a reasonable relationship to the preservation or efficiency of a well regulated militia. *Cases v. United States,* 131 F.2d 916, 921–23 (1st Cir.1942); *see also Thomas v. Members of City Council,* 730 F.2d 41, 42 (1st Cir.1984) (per curiam).

In the instant case, Defendant has presented no evidence that he is a member of the National Guard or some other military organization that would validate his possession of a firearm. Consequently, Defendant has no individual right to possess a firearm under the United States Constitution and has failed to establish a liberty interest based on the Second Amendment. The Court therefore moves on to consider Defendant's remaining due process arguments.

## B. Procedural Due Process Rights

■ Actual knowledge of the law's requirements is generally not a precondition to criminal liability. *See United States v. Kafka,* 222 F.3d 1129, 1131 (9th Cir.2000), *cert. denied,* 532 U.S. 924, 121 S.Ct. 1365,

---

1. Defendant does not argue that he has a fundamental right to keep and bear arms and thus does not implicate substantive due process concerns. Courts addressing the question have uniformly failed to find a fundamental right to possess firearms. *See, e.g., United States v. Hancock,* 231 F.3d 557, 566 (9th Cir.2000), *cert. denied,* 532 U.S. 989, 121 S.Ct. 1641, 149 L.Ed.2d 500 (2001); *United States v. Baker,* 197 F.3d 211, 216 (6th Cir.1999); *Gillespie v. City of Indianapolis,* 185 F.3d 693, 709 (7th Cir.1999).

Also, Defendant asserts only the broader argument that section 922(g)(4) is unconstitutional on its face. He does not argue the narrower proposition that the statute is unconstitutional only as applied to him.

2. The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

149 L.Ed.2d 293 (2001); *United States v. Meade,* 175 F.3d 215, 225 (1st Cir.1999). However, ignorance of the law may excuse criminal behavior where liability attaches to a wholly passive act otherwise devoid of circumstances that would normally alert a reasonable person to the wrongdoing. *Lambert v. California,* 355 U.S. 225; 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). Defendant asserts that without some particularized finding that a mentally ill individual is dangerous or some fair warning of the consequences attaching to adjudication as a "mental defective" or commitment to a mental institution, *Lambert* should apply to section 922(g)(4). Because the condition of mental illness is wholly involuntary, he argues that the statute punishes passive conduct that does not appear blameworthy to a reasonable person. Defendant's reliance on *Lambert* is misplaced.

Subsequent interpretations of *Lambert* have limited the reach of the decision. *See, e.g., Texaco, Inc. v. Short,* 454 U.S. 516, 537 n. 33, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (indicating that *Lambert*'s "application has been limited"); *Meade,* 175 F.3d at 225–26 ("any attempt to introduce *Lambert* into new environs must be viewed with great circumspection"). As a result, the holding has been largely cabined to its facts. *Kafka,* 222 F.3d at 1131; *Meade,* 175 F.3d at 225–26. In *Lambert,* the defendant was prosecuted under a municipal ordinance requiring all felons to register with the police if they remained within the city for five or more days. 355 U.S. at 226, 78 S.Ct. 240. The Supreme Court held that the ordinance violated due process because it punished passive conduct that a reasonable person would not consider criminal or blameworthy. *Id.* at 228–30, 78 S.Ct. 240.

■ Here, Defendant's conduct was not so innocuous. Possession of firearms is a heavily regulated and dangerous activity, requiring voluntary actions and decisions on Defendant's part. *See, e.g., United States v. Hancock,* 231 F.3d 557, 564 (9th Cir.2000), *cert. denied,* 532 U.S. 989, 121 S.Ct. 1641, 149 L.Ed.2d 500 (2001) (recognizing that possession of a gun is "an active and potentially dangerous act") (quoting *United States v. Indelicato,* 800 F.2d 1482, 1484 (9th Cir.1986)); *Hutzell,* 217 F.3d at 969 (noting that possession of a gun is "a highly regulated activity, and everyone knows it"). Indeed, the Gun Control Act was intended to broadly regulate firearms possession and impose national uniformity in the field. *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 112, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *Chamberlain,* 159 F.3d at 660. Recognizing the danger inherent in firearms, the Act sought to "keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Dickerson,* 460 U.S. at 112, 103 S.Ct. 986 (quoting *Scarborough v. United States,* 431 U.S. 563, 572, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977)). In the case of those adjudicated as mental defectives or committed to a mental institution, the dangerous relationship between guns and the irresponsible warrants a presumption that such individuals are not to be trusted with firearms. *Dickerson,* 460 U.S. at 116, 103 S.Ct. 986; *Chamberlain,* 159 F.3d at 660.

Adjudication as a "mental defective" reinforces this link between section 922(g)(4) and the dangers presented by firearms when in the hands of certain individuals. Under the implementing regulations to the federal firearms legislation, adjudication as a mental defective occurs where "as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease [that individual is determined to be] a danger to himself or to others [or lack] the mental capacity to contract or manage his own affairs." 27 C.F.R. § 178.1(a) (2002); 27 C.F.R. § 178.11(a)

(2002). In the present case, Defendant's involuntary commitment pursuant to Maine's emergency hospitalization statute required a similarly particularized finding.[3] Subject to judicial review, a health care. professional must examine the patient on the date of application and certify that the patient "poses a likelihood of serious harm" under the Maine provision.[4] 34–B M.R.S.A. § 3863 (Supp.2001). Section 922(g)(4) therefore regulates sufficiently blameworthy conduct to afford Defendant constitutionally adequate notice of the criminal nature of his behavior.

The statute, however, does not rely on "dangerousness alone" to notice people of proscribed conduct. *Staples v. United States*, 511 U.S. 600, 611, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (requiring that a defendant know the facts that make his conduct criminal). Section 924(a)(2) further ensures that Defendant was noticed of potential criminal liability by requiring that Defendant "knowingly" violate section 922(g)(4). While the *mens rea* element does not demand knowledge that possession is prohibited, it does guarantee that Defendant knowingly possessed the weapon. *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *Meade*, 175 F.3d at 226 n. 5. Accordingly, Defendant must affirmatively act to possess a firearm and satisfy the elements of the crime. The statute also preserves the opportunity for post-deprivation relief under section 925(c), enabling Defendant to challenge the disability on an individual basis. *See United States Department of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S.

556, 559, 106 S.Ct. 2683, 91 L.Ed.2d 459 (1986); *Chamberlain*, 159 F.3d at 665. Because section 922(g)(4) does not legislate conduct and circumstances so innocent as to fall within the narrow confines of *Lambert*, the Court concludes that the statute affords adequate notice, in conformance with the due process requirements of the Fifth Amendment.

■ Moreover, Congress did not intend the full panoply of due process rights to attach to all predicate status determinations falling within the firearms legislation. *Baker*, 197 F.3d at 216–17; *Chamberlain*, 159 F.3d at 664. Even assuming the Maine emergency hospitalization procedure was not sufficiently particularized as Defendant alleges, his indictment under section 922(g) remains constitutionally sound. Congress has specified where a greater degree of procedural formality is required for the underlying legally-relevant status to arise. *Chamberlain*, 159 F.3d at 664–65. For instance, conviction under the ban on individuals subject to a domestic restraining order requires that the defendant receive actual notice of the order as well as an opportunity to participate in the hearing. 18 U.S.C. § 922(g)(8). The section further requires that the restraining order include either a finding that the defendant represents a threat to the safety of his family or an express prohibition on the use of physical force. *Id.* Given the adequate notice afforded by section 922(g)(4), Defendant must therefore comply with the strictures of the federal statute regardless of the underlying process applied to bring him within the ambit of the firearms ban. *See Lewis v.*

---

**3.** Defendant concedes that he was "committed" to a mental institution as that term was defined in *United States v. Chamberlain*, 159 F.3d 656 (1st Cir.1998).

**4.** "Likelihood of serious harm" encompasses both a "substantial risk of physical harm to the person himself as manifested by recent

threats of, or attempts at, suicide or serious bodily harm to himself" and a "substantial risk of physical harm to other persons as manifested by recent evidence of homicidal or other violent behavior or recent evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them ...." 34–B M.R.S.A. § 3801(4) (1988).

*United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); *Baker,* 197 F.3d at 217.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.

SO ORDERED.