McCann, J.
INTRODUCTION
For the Commonwealth — Assistant District Attorney, Michael J. Ball.
For the defendant — Joseph F. Brennan, Jr.
The Defendant, Ronald Norling (“the Defendant”), is charged with five counts of unlawful possession of a large capacity weapon and fifteen counts of unlawful possession of a large capacity feeding device in violation of G.L.c. 269, §10(m) (1998). The Defendant filed a Motion to Dismiss the charges on the grounds that the statute, as applied to him, violates his equal protection and due process rights pursuant to the Fourteenth Amendment of the United States Constitution. For the foregoing reasons, the Defendant’s Motion to Dismiss is ALLOWED.
BACKGROUND
On April 20, 2002, officers from the Rutland Police Department (“the Police”) arrested the Defendant for domestic assault and batteiy with a dangerous weapon. Subsequent to the arrest, the Defendant’s wife obtained an emergency abuse prevention order. Pursuant to that the order, the Defendant informed the Police that he possessed long guns in a locked cabinet in his cellar. The Police seized the guns and determined that they were large capacity firearms and feeding devices.
The Defendant purchased the weapons from licensed gun stores during the 1980s. At that time, the Defendant held a Class C firearms identification card (“FID card”), which the law required for the purchase of large capacity weapons. Up until 1998, the Commonwealth employed a two-tiered licensing system that required an FID card for the purchase and ownership of rifles and shotguns and a license for the purchase and ownership of a broader categoiy of weapons. In 1998, the Legislature passed the Massachusetts Gun Control Act and replaced the two-tiered licensing system with a three-tiered system. Pursuant to the new law, a Class A license allows its possessor to own any type of weapon, including large capacity, and a Class B license entitles its possessor to own non-large capacity firearms and both large and non-large capacity rifles and shotguns. G.L.c. 140, §131(a); G.L.c. 140, §131 (b). A person with an FID card has the same rights as someone with a Class B license, except he cannot cany firearms. G.L.c. 140, §129(b).
*485 The Defendant’s original license was set to expire on August 28, 2003. The revised statute, however, set forth new expiration and renewal dates for existing licenses. To comply with the new licensing system, the Defendant should have applied for a Class A or B license on or before August 28, 1999. The Defendant was unaware of the change in the law and did not seek to renew his license before the scheduled expiration date.
DISCUSSION
General Laws c. 269, §10(m) states, “Anypersonnot exempted by statute who knowingly has in his possession ... a large capacity weapon or large capacity feeding device . . . who does not possess a valid Class A or Class B license to cany firearms . . . shall be punished by imprisonment in a state prison for not less than two-and-one-half years and not more than ten years.” The statute requires that a defendant have knowledge of the facts comprising the offense, in this case, possession of large capacity firearms and feeding devices without a license or the benefit of statutory exemption. States v. Meade, 175 F.3d 215, 226 n.5 (1st Cir. 1999) (concluding possession statute refers only to knowledge of possession); United States v. Hancock, 231 F.3d 557, 562-63 (9th Cir. 2000). The Defendant argues that the statute is unconstitutional as applied to him because, although he knowingly possessed the weapons at issue, he did not know his license had been invalidated by changes in the law.
The Fourteenth Amendment to the U.S. Constitution provides that no person shall be deprived of life, liberty or properly without due process of law. While the principle that ignorance of the law is no excuse is deeply rooted in our legal system, the courts have drawn a limited distinction to this principle on due process grounds. Lambert v. California, 355 U.S. 225 (1957); United States v. Denis, 297 F.3d 25, 28 (1st Cir. 2002) (explaining that Lambert exception excuses “justifiable ignorance”).
In Lambert, the United States Supreme Court ruled that due process principles may excuse compliance with a statute when the conduct at issue is wholly passive in nature and the defendant did not know or had no reason to know of the requirements of the law. Lambert, 355 at 228-89. The municipal ordinance at issue in Lambert was one that required convicted felons to register with the chief of police within five days of arrival in the city of Los Angeles. Id. at 226-27. The Court held that the ordinance violated the defendant’s due process rights because she had no knowledge of her duty to register and the government failed to show that there was any probability that a person in her position would have had inquired about registration. Lambert, 355 U.S. at 229.
The Lambert exception, however, is a narrow one, which the courts have been hesitant to expand. Hancock, 231 F.3d at 564. The courts have limited application of the exception to distinctive facts and circumstances. Meade, 175 F.3d at 226 n.5.
While the Massachusetts state courts have yet to address the issue, other jurisdictions, including the First Circuit Court of Appeals, have interpreted and applied the Lambert exception. Although different jurisdictions have reached different results, it is clear that Lambert requires both wholly passive activity on the part of the defendant and a showing that the defendant did not know and had no reasonable probability of knowing of the illegality of his conduct.
Wholly passive activity involves an omission to act that is “unlike the commission of actsf] or the failure to act under circumstances that should alert the doer to the consequences of his deed.” Lambert, 355 U.S. at 228. In Lambert, the defendant’s failure to register as a felon when she entered the city did not involve any action beyond her mere presence in Los Angeles and, the court ruled that such passive action gave her no cause to inquire into whether she was committing a crime. Id. at 229. In State v. Young, the North Carolina Court of Appeals applied a similar analysis to hold that a sex-offender registration statute requiring offenders to register changes of address within 10 days of a move was unconstitutional as applied to an incompetent defendant who was neither formally notified of the statute’s requirements nor, by reason of his incompetence, had the wherewithal to inquire. 140 N.C.App. 1, 11 (2000).
On the other hand, courts have held that, unlike the omission to act involved in failure-to-register cases, the possession of firearms is active. Denis, 297 F.3d at 29; United States v. Hancock, 231 F.3d at 564. In both Denis and Hancock, the courts opined that the very act of possessing a weapon is an “active and potentially dangerous” one. Id.
Lambert also requires knowledge or the reasonable probability of knowledge that the conduct at issue constitutes a crime. Lambert, 355 U.S. at 228. Knowledge sometimes takes the form of actual notice. Id. (noting sometimes notice essential so citizen has an opportunity to defend charges). In Lambert, the court rejected the contention that a defendant who failed to register her felony status within five days in accordance with a felon-registration ordinance had knowledge, reasoning that there are few conceivable circumstances in which an ordinary citizen would inquire into the necessity of such a registration. Id. at 228-29
The courts, however, will presume an individual has knowledge if reasonable persons in the defendant’s position would have appreciated the risk of the challenged conduct. People v. Garcia, 25 Cal. 4th 744, 752 (2001). A defendant should be aware that his conduct might violate the law when it involves a questionable and highly-regulated activity. United States v. Lamb, 945 F.Sup. 441, 443 (1996). For example, in Lamb, the court ruled that possession of certain types of pomog- *486 raphy is an activity that a reasonable person might believe to be unlawful and therefore, the defendant should have inquired into the applicable law. Lamb, 945 F.Sup. at 443.
When applying Lambert to firearms possession statutes, the courts have routinely held that a defendant who is either convicted of a domestic violence offense or becomes the subject of a domestic abuse prevention order has reason to believe that his status as a gun owner might change as a result. Hancock, 231 F.3d at 565; United States v. Bostic, 168 F.3d 280, 288-89 (4th Cir. 1999); Meade, 175 F.3d at 226. The Fourth Circuit, in United States v. Mitchell, reasoned that, “an individual’s domestic violence conviction should put that person on notice that subsequent possession of a gun might well be subject to regulation.” 209 F.3d 319, 322-23 (4th Cir. 2000). In Meade, the First Circuit concluded that the defendant’s status as the subject of state anti-harassment and anti-stalking orders made his belief he could continue to lawfully possess a weapon pursuant to federal law an unreasonable one. Meade, 175 F.3d at 226.
Similarly, in Hancock, the Ninth Circuit rejected the defendant’s due process challenge when the defendant: legally purchased weapons in the 1980s; was convicted of four misdemeanors involving domestic abuse and threats in 1994 and 1995; continued to possess the weapons after his convictions; and claimed he did not know or have reason to know that his convictions changed the legality of his gun ownership. Hancock, 231 F.3d at 562. Reviewing and expanding on the reasoning put forth by other circuits, the court held that, “by owning firearms, the [defendant knowingly subjected himself to a host of state and federal regulations; and by committing the domestic violence offense, he removed himself from the class of ordinary and innocent citizens who would expect no special restrictions on the possession of firearms.” Id. at 564-65 (internal quotations and citations omitted).
The case at bar presents a novel issue in that it involves a once-legal possession of firearms that was subsequently rendered illegal, not by any affirmative conduct but by the defendant’s failure to re-register his weapons in accordance with statutory amendments. Like the defendant in Lambert, who failed to register as a felon with the Los Angeles chief of police, the Defendant’s continued possession of his weapons after a change in the gun control laws was an entirely passive omission. Lambert, 355 U.S. at 228-89. Although courts have opined that possession itself constitutes active conduct, the conduct at issue in this case is not the original possession or the possession after some change in the defendant’s status from an ordinary citizen, but continued possession of firearms in the absence of any intervening event that would have alerted a reasonable person to the illegality.
Moreover, the Defendant did not know or have reason to know that his omission violated the law. The Commonwealth presented to the Court no evidence that the Defendant was notified of the changes in the licensing system or the new expiration and registration dates with which he should have complied. Nor can this Court find implied notice based on a change in the Defendant’s circumstances. Unlike the defendants in Hancock, Meade and Mitchell all of whom failed to inquire about the lawfulness of their gun ownership after they were convicted of crimes of domestic abuse or subjected to abuse-prevention orders, the Defendant in this case, committed no crimes that would have given him or any other reasonable gun owner cause to check on the stats of his registration. Hancock, 231 F.3d at 565; Meade, 175 F.3d at 226; Mitchell 209 F.3d at 322-23.
This is a case in which the Defendant omitted to act by failing to comply with a law of which he had no notice or reasonable knowledge. Pursuant to the Fourteenth Amendment, as interpreted by Lambert and its progeny, this Court concludes that the Defendant’s violation of G.L.c. 269, §10(m) was justifiably excusable and that the Defendant’s further prosecution offends due process. Therefore, the Defendant’s Motion to Dismiss is ALLOWED.
ORDER
For the reasons stated herein, the Motion to Dismiss is ALLOWED.