STATE OF NEW JERSEY, PLAINTIFF, v.
LEONARD E. HATCH, DEFENDANT.

Somerset County Court
Law Division

Decided January 14, 1972.

*Mr. Leonard N. Arnold,* Assistant Prosecutor for plaintiff (*Mr. Michael R. Imbriani,* Prosecutor, Somerset County, attorney).

*Mr. Ronald V. Rockoff,* Assistant Deputy Public Defender, for defendant (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney).

LEAHY, J. C. C. Defendant Leonard E. Hatch, a resident of Erving, Massachusetts, was convicted by a jury of two high misdemeanors: possessing a rifle and possessing a shotgun in an automobile without a New Jersey firearms purchaser identification card, in violation of *N. J. S. A.* 2A:151-41.

At the close of the State's case defense counsel moved for a judgment of acquittal. The court reserved on the motion. Defense counsel renewed the motion at the end of the case and the court again reserved, declaring that the motion would be treated as a motion for judgment of acquittal made after the jury is discharged, pursuant to the provisions of *R.* 3:18-2. This court now decides defendant's motion for judgment of acquittal notwithstanding the verdict of guilty.

On March 2, 1971, defendant, driving an automobile with Massachusetts registration, was stopped by police officers on New Jersey State Highway Route 22 because of a motor

vehicle violation for which he was subsequently convicted in the Bound Brook Municipal Court. One of the officers saw the butts of what appeared to be two firearms under a large quantity of clothing piled in the rear seat of the automobile. Investigation revealed that an operable rifle and shotgun were in fact on the back seat under defendant's clothing. Cartridges for the firearms were also found in the automobile.

Defendant told the officer that he had a valid Massachusetts hunting license and was a member of a gun club in that State. He said that he was traveling from Massachusetts to Pennsylvania in the hopes of finding employment in the heavy construction field and had his guns with him because he intended to engage in hunting during his stay in that state. The officer asked for a New Jersey firearms identification card and when the same was not forthcoming placed defendant under arrest for carrying a firearm in a motor vehicle without the requisite permit.

Defendant was kept in jail from March 2 until March 24, 1971. On June 28, 1971 an indictment was handed down in three counts charging the possession of the rifle, the possession of the shotgun and possession of a dangerous knife in the automobile. The jury found defendant not guilty of possession of a dangerous knife in an automobile.

During the trial defendant's Massachusetts firearms identification card was introduced in evidence. Massachusetts law requires that firearms carried in an automobile shall be under the direct control of the person, *Massachusetts General Laws* C. 140, § 131C. "So long as a licensed firearm, whether it be used for hunting or any other proper purpose, is under direct control of licensee when carried in a vehicle, no law is violated." Op. Mass. Atty. Gen., March 4, 1964, p. 233.

No evidence was offered during the trial that defendant's conduct or mode of possession would have violated the law of his place of domicile in any way.

The key issue to be decided in this case is whether conduct on the part of a citizen domiciled in a state other than

New Jersey which would be perfectly legal conduct in the state of his domicile can result in a conviction of a high misdemeanor in the State of New Jersey when it is performed while the citizen is merely traveling through this state.

The problem presented can better be understood if one considers the reverse possibility of a New Jersey domiciliary, bearing a valid New Jersey identification card, driving through Massachusetts to a hunting vacation in Maine, with his firearms locked in the trunk of his car as required by New Jersey law, *N. J. S. A.* 2A:151–42, being involved in an accident which springs his trunk open. Should he be validly convicted for not having his firearms "under his direct control" as required by Massachusetts law?

The issue is relatively novel because, in this court's opinion, it is rare indeed that such a technical violation of our statutes results in an arrest, followed by a decision on the part of a prosecutor to press for an indictment, followed by the presentation of an indictment by a grand jury and a conviction by a trial jury. Normally the discretion imposed upon a prosecutor by virtue of the responsibility of his office, *State v. Reed,* 34 *N. J.* 554 (1961), would be exercised before the matter reached a grand or petit jury. However, such is not the situation here and the responsibility falls upon this court to determine the issue presented.

Before proceeding to cite law on this subject, the court notes that there is absolutely no evidence introduced or offered in this case upon which it might be inferred that defendant was guilty of anything more than the act of traveling through New Jersey in a manner which would have been permissible under the laws of his place of domicile, but which is not permitted under the law of New Jersey. The only act of which defendant can be accused is of traveling through New Jersey with firearms inside his automobile at a time that he did not possess a New Jersey firearms identification permit. No evidence was offered of any attempt or indication of intent to use the weapons in this State. There was no evidence of defendant's involvement with any other human be-

ing in this State. There was no evidence of any purpose for possessing the firearms or intent to use them which might be violative of our statutes. There was no evidence that defendant was a member of, or was connected with, any group or organization of individuals that might intend to violate the law. There was no evidence of any other criminal acts on the part of defendant. There was no evidence that defendant was aware that New Jersey law prohibited the possession of a firearm inside an automobile.

Defendant was acting in the manner prescribed by the law of Massachusetts while traveling from his home for a legitimate purpose to Pennsylvania through New Jersey, and that conduct resulted in his conviction of a high misdemeanor.

Our Supreme Court has not ruled on the point at issue in this case. However, *Neeld v. Giroux,* 24 *N. J.* 224 (1957), deals with a similar and somewhat analogous situation. Defendant in that case was stopped on a New Jersey highway with 154 cases of cigarettes which did not bear tax stamps required by the New Jersey Cigarette Tax Act and without having in his possession invoices indicating the consignee of the shipment. The Supreme Court unanimously held that the purpose of the New Jersey statute was to prevent the illegal smuggling of cigarettes into this State. It then interpreted the statute in the light of the right of citizens of the United States to move in interstate commerce. Acknowledging that a state may protect its local interests by reasonable measures which do not unduly interfere with interstate commerce, the court found that the statute applied only if there was an intent or purpose to divert the untaxed cigarettes into New Jersey. It found the requirement of an intention to sell, use or possess for sale or use in New Jersey. It found a legislative intent to strike at smuggling into the State of New Jersey. Of special note, considering the fact that the offense of which defendant Hatch was convicted is a high misdemeanor, is the emphasis which our Supreme Court placed on "the heavy consequences of a violation" of

the Cigarette Tax Act. The court expressly stated, "We should not easily assume that the Legislature intended to deal so severely with a failure to carry documents where there [was] no purpose to divert the cargo into local commerce." Id, at 229. The court reversed.

*Neeld v. Giroux* is a recognition of the principle that a legitimate interest of the State of New Jersey must be threatened before a New Jersey statute can be interpreted to restrict the free flow of goods and persons through this State.

The United States Supreme Court in the case of *Lambert v. People of State of California*, 355 *U. S.* 225, 78 *S. Ct.* 240, 2 L. Ed. 2d 228 (1957), ruled that a statute requiring a felon to register with the local police was unconstitutional as applied against a defendant who had no knowledge of the requirement and where there was no showing made of the probability of such knowledge. Conceding that "ignorance of the law will not excuse," the majority drew a distinction between conduct that is wholly passive on the one hand and, on the other hand, conduct which amounts to the commission of an act or the failure to act under the circumstances that should alert the doer to the consequences of his deed. It held that due process places some limits on the exercise of the powers of local government in exercising their police powers.

The court especially cited the fact that defendant, on first becoming aware of the duty to register, was given no opportunity to comply with the law and avoid its penalty but was merely given the opportunity to suffer the consequences, *i. e.*, conviction of a crime. It stated,

* * * We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.' * * * Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not

be convicted consistently with due process. Where it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community. [78 *S. Ct.* at 243, 244]

The analogy to the case at hand is clear. A resident of Massachusetts cannot be expected to know, or to ascertain for purposes of driving through the State of New Jersey, the requirements of our firearms statute which differ from those of his state of domicile. To interpret the New Jersey statute to apply to him without some notice to him or to the traveling public and without any further indicia of misconduct on his part would be an onerous burden on due process and would be an improper interpretation of the New Jersey statute.

The law of New Jersey has long and consistently recognized the necessity of notice before individuals can be held to account for commission of statutorily created offenses. *State v. Hudson County News Co.,* 35 *N. J.* 284 (1961); *State v. Joas,* 34 *N. J.* 179 (1961); *State v. Klapprott,* 127 *N. J. L.* 395 (Sup. Ct. 1941). These cases all contain language emphasizing the need to inform individuals of the nature of the proscribed conduct before the penalty for violation thereof will attach. Though these cases deal primarily with the requirement that the language of a penal statute should be clear and unambiguous so that individuals will have proper notice of the requirements of the law, the same principle of requiring reasonable notice before criminality can be charged applied in this case.

The legal maxim that everyone is presumed to know the law is a broad generalization of a necessary doctrine. Everyone can reasonably be required to know the law of his domicile, and it is not unreasonable to require that everyone refrain from misconduct which could properly be described as *malum in se.* However, to impose the penalty of conviction for a high misdemeanor, the equivalent of a felony in the other jurisdictions of this nation, for conduct *malum prohibitum* in a jurisdiction in which one is not domiciled, with-

out any prior notice or opportunity to rectify or correct the situation, is violative of due process of law and principles of fundamental fairness.

That this is so and has been recognized as so in the State of New Jersey can be seen from the opinion of the Attorney General, *F. O.* 1961, No. 20, which holds as follows:

Statute which exempts, from the statute which prohibits the carrying of *concealed weapons on the person or in a vehicle*, "Persons having a hunter's license in going to or from places of hunting," exempts, while traveling through New Jersey, New Jersey or out-of-state residents having a valid hunter's license from another state which permits the use of pistols or revolvers in hunting, provided the following requirements are met: *the person with a concealed weapon* must (1) have a valid hunting license in his possession from the state of his destination, (2) there must be a pistol season open in that state at the time or reasonably close in point of time, (3) he must be traveling the most expeditious route to or from the foreign state, and (4) he must be going to the foreign state with intent to hunt, or if he is returning then in fact have hunted. [Emphasis supplied]

If it is recognized that the concealed weapon section of *N. J. S. A.* 2A:151–41 does not apply to out-of-state citizens traveling through New Jersey, it should clearly be recognized that the possession in an automobile of a hunting weapon without a New Jersey firearms identification permit should not constitute an offense for an out-of-state driver in the absence of something more by way of misconduct.

The statute could not have been intended by the Legislature of New Jersey to apply to one in the position of the defendant Hatch, and his motion for judgment of acquittal is granted.