EASTERBROOK, Chief Judge.
Lacey Phillips and Erin Hall decided to buy a house together. They asked Associated Bank for a mortgage loan. It said no, because Hall had a recent bankruptcy and the couple’s joint income (approximately $3,800 a month) was too low for the loan they needed (more than $200,000). Phillips and Hall next turned to Brian Bowling, a mortgage broker. Bowling told them that they could qualify under what he called the “stated income loan program” — his label for an approach designed to deceive lenders. Bowling prepared an application that omitted Hall’s name (avoiding a credit check that would have revealed his bankruptcy), attributed the combined income of Hall and Phillips to Phillips alone, doubled that combined income, and falsely claimed that Phillips was a sales manager at a satellite TV business. (Bowling knew that the $90,000 annual income Phillips claimed to earn needed to match the job she claimed to hold; actually she was a hair stylist at J.C. Penney, with an annual income less than $24,000.) Phillips signed the application and an employment verification form. Fremont Investment & Loan extended credit, and the couple bought their home. But they could not keep up the payments, and the mortgage holder foreclosed. (There was a sec *803 ond mortgage too, but it need not be discussed.)
Bowling and associates at his firm Platinum Concepts repeated this process often enough that they were bound to be caught. He pleaded guilty to bank fraud and, in an effort to lower his own sentence, agreed to assist in the prosecution of his clients. Phillips and Hall were among the clients the United States prosecuted. A jury convicted them of violating 18 U.S.C. § 1014, and the judge sentenced each to two months’ imprisonment plus three years’ supervised release and about $90,000 in restitution. Bowling is serving a sentence of 38 months.
Phillips and Hall contend that Bowling’s statements provide them with a defense. The district judge barred them from asking questions designed to elicit testimony that he assured them that the “stated income loan program” is lawful; the judge also foreclosed an argument that Phillips made a mistake of fact when signing the loan application and employment verification form. According to defendants, § 1014 is a specific-intent crime, and they were hindered in showing the lack of intent. The district judge concluded, however, that Phillips and Hall sought to argue a mistake of law, not an error of fact or a lack of the required intent. The instructions required the jury to acquit unless it found beyond a reasonable doubt that Phillips and Hall knew that the statements on the application and form were false; a genuine mistake of fact would have led to acquittal. What Phillips and Hall really wanted to argue, the judge wrote, is that Bowling’s false assurances about the legality of lying to lenders exculpate the lies; that would be a mistake-of-law defense, and “[t]he rule that ‘ignorance of the law will not excuse’ is deep in our law.” Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1958) (citations omitted). Compare United States v. Feola, 420 U.S. 671, 687, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), with Ratzlaf v. United States, 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).
Section 1014 is a simple statute. It reads: “Whoever knowingly makes any false statement ... for the purpose of influencing in any way the action of [any of a long list of entities, including federally insured lenders] shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.” There are just three elements: (1) knowingly making a false statement; (2) to one of the listed entities; (3) for the purpose of influencing that entity. Phillips and Hall concede that the documents contain many false statements, and the jury found that Phillips signed them knowing their contents to be false. Defendants concede that Fremont was among the entities listed in § 1014. (We say “was” because that specialist in subprime credit collapsed in spring 2007, having made all too many loans to people who could not repay. Its failure was a harbinger of things to come.) That leaves “for the purpose of influencing in any way the action” of the lender. This can reasonably be described as a specific-intent element. But it is a specific specific-intent element. That is, it describes exactly the required mental state; it does not require proof that the defendant knew that his acts were unlawful. The bank fraud statute, 18 U.S.C. § 1344, requires proof of intent to defraud; § 1014 is a different animal, requiring only proof of intent to influence. See United States v. Lane, 323 F.3d 568, 582-85 (7th Cir.2003).
Suppose Bowling had testified that he assured defendants that federal law allows them to deceive lenders. Such testimony would not have tended to negate the intent element in § 1014. The statute does not require proof that the defendants knew their acts to have been unlawful or *804 to constitute fraud; it requires only intent to influence the lender. Bowling set out to do exactly that: influence a lender, so that the “no” from Associated Bank would turn into a “yes” from someone else. Defendants’ goal likewise was to find a way to influence a lender to put up the money so they could buy a house. The evidence of defendants’ intent to influence a lender is strong; defendants themselves do not argue that the evidence is insufficient.
We do not know what Bowling would have testified had defense counsel been allowed to ask extra questions, but the prosecutor has not asked us to treat as a forfeiture the absence of an offer of proof. Fed.R.Evid. 103(a)(2). We therefore must assume that Bowling would have testified along the lines explored at oral argument.
Perhaps Bowling would have testified, for example, that he assured defendants that false statements about income and employment are permissible because banks don’t care about the answers — that banks plan to sell or securitize the loans, so someone else will bear any loss. Bowling might have told Phillips and Hall that all lenders care about is having the paperwork appear to be in order, so that they can package the loans for resale. But if Bowling had testified in this fashion, it would not have helped the defense. It would not have negated the falsity of the statement (element 1), the identity of the lender (element 2), or the defendants’ intent to influence the lender (element 3). Quite the contrary, it would have bolstered the prosecution’s case by showing that Bowling led defendants to believe that false statements would succeed in influencing the lender, thus reinforcing proof of element 3. Testimony of this kind would have led defendants to believe that the lender would not verify the borrowers’ claims about income and employment (as Fremont didn’t verify them).
Negating the sort of defense Phillips and Hall wanted to offer may have been why the United States prosecuted under § 1014 rather than § 1344, which requires proof of intent to defraud. Negating this kind of defense also may be why Congress enacted § 1014. The argument that no wrong has been done because the loss will be passed along to someone else, such as a syndicate investing in securitized loans, or the Treasury via a guaranty, is short-sighted; the loss is still there, and the fact that it is borne by someone other than the immediate lender is a good reason to make it a crime to lie to influence a bank, especially when the bank does not care about the truth because it expects to shift the loss to a stranger. If it is a crime to make false statements that help banks “put the paperwork in apparent order”, then there will be fewer un-sustainable loans and fewer losses to investors; credit will go to people who can repay, rather than the people most willing to exaggerate their income.
The sort of defense that Phillips and Hall wanted to make would have been relevant if § 1014 required the false statement to be material. Many anti-fraud statutes, including § 1344, require proof of materiality, a term that the Supreme Court understands to mean “ ‘[having] a natural tendency to influence, or [being] capable of influencing, the decision of the ... body to which it was addressed.” Kungys v. United States, 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (citations omitted). If Bowling had testified along the lines we have hypothesized, defendants could have argued that they lacked the intent to make a material misstatement, because Bowling led them to believe that the truth of what they put in the application would not matter to the lender.
*805 Section 1014 does not require proof of materiality, however. That’s the holding of United States v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). Justice Stevens argued in dissent that the absence of a materiality requirement would make it a felony to flatter a bank official in the hope that he will reciprocate with a loan. 519 U.S. at 500-13, 117 S.Ct. 921. The majority did not deny this consequence; it said only that prosecution for “trivial or innocent conduct” (id. at 498, 117 S.Ct. 921) would be unusual, and it reiterated that a person who “knows the falsity of what he says and intends to influence the institution” (id. at 499, 117 S.Ct. 921) violates § 1014. Statements that a bank would view as trivial probably won’t influence it, and such statements therefore will not be made for the purpose of influencing it. But Phillips and Hall misrepresented their income, and Phillips’s employment, knowing (if only because Bowling told them) that such details do influence lenders. They were right; Fremont made the loan even though Associated Bank, which knew the truth, refused. And because defendants knew the statements to be false (so the jury found), they violated § 1014 whether or not they could have been convicted of violating § 1344.
Phillips and Hall are not the first defendants to argue that they should be acquitted because, although they lied to a bank, they thought that the bank cared only about paperwork and not about the truth of their representations. When seeking a loan, Vincent Lane lied about his net worth. In his prosecution under § 1014, Lane contended that the bank actually knew the truth and didn’t care about it (beyond wanting the paperwork to look good); according to Lane, the bank cared only about a third party’s guaranty of the indebtedness. The district court excluded evidence that would have supported Lane’s position, just as the district court here excluded evidence about what Bowling told Phillips and Hall. We affirmed, holding that making false statements to make paperwork look good, and thus be acceptable to a bank, violates § 1014 even if the bank does not give a hoot about the statements’ truth. 323 F.3d at 582-85.
Defendants reply that although materiality is not an element of the § 1014 offense, “subjective materiality” (Reply Br. 12, 14, 16) is — and that as a result of Bowling’s statements they lacked “subjective materiality.” We don’t follow this. When materiality is an element of a crime, then the prosecutor must show that the defendant intended to make a material statement; that’s a subjective inquiry. But when materiality is not an element— as it is not under § 1014 — then the defendant’s beliefs about materiality are irrelevant. The prosecution must show whatever mental states matter to the statutory elements. For § 1014, this means knowledge of falsity and intent to influence the lender. What Phillips and Hall thought or believed about other matters, such as materiality, is no more relevant than whether Phillips and Hall thought that the loan would contribute to tax evasion, air pollution, or any other element of some other statute. The district court’s order limiting the subjects on which Bowling could testify therefore was proper.
Affirmed