STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-71

STATE OF LOUISIANA

VERSUS

CHARLES L. BERGERON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 15984-08
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and
Shannon J. Gremillion, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

Thibodeaux, Chief Judge, concurs in part and dissents in part and assigns written
reasons.

John F. DeRosier, District Attorney
Carla S. Sigler, Assistant District Attorney
Karen C. McLellan, Assistant District Attorney
Fourteenth Judicial District Court
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

Beth S. Fontenot
Louisiana Appellate Project
P. O. Box 3183
Lake Charles, LA 70602-3183
(337) 491-3864
COUNSEL FOR DEFENDANT/APPELLANT:
    Charles L. Bergeron

**GREMILLION, Judge.**

Defendant, Charles L. Bergeron, who had previously been convicted of molestation of a juvenile, was tried and convicted of failure to register as a sex offender, a violation of La.R.S. 15:542. He was sentenced to ten years at hard labor without benefit of probation, parole, or suspension of sentence.

Defendant is now before this court asserting two assignments of error. He contends that his conviction for failure to register as a sex offender violated his due process rights under the Louisiana and United States Constitutions because he believed he had satisfied the registration requirements and that the trial court's imposition of the maximum sentence was constitutionally excessive. For the reasons that follow, we affirm Defendant's conviction and sentence.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant contends his conviction for failure to register as a sex offender violated his due process rights under the Louisiana and United States Constitutions because he believed that he had satisfied the registration requirements and was not aware of the need to further inform the sheriff's department of the fact that he was temporarily living with his brother.

Detective Scott Miller testified that he was a member of the sex offender compliance unit and supervised and tracked registered sex offenders in Calcasieu Parish. Detective Miller indicated Defendant was required to register as a sex offender because he was convicted of molestation of a juvenile in 2000. Defendant reported to Detective Miller in February 2007. At that time, Defendant said his address was 321 Dalton Road. Defendant further informed Detective Miller that, due to damage caused by Hurricane Rita, the residence on Dalton Road was unlivable, and he would be staying at "Country Aire Trailer Park on 397, lot #30" at night and working on the Dalton Road residence during the day. The sex

offender registration form, marked as State's Exhibit 1, was completed by Defendant on February 26, 2007.

Detective Miller was further questioned as follows:

Q Okay. Sir, whenever you meet with a sex offender such as Mr. Bergeron, and they come report to you once a year, do you go over -- you go over, explain to them the requirements that they have to abide by as far as notifying you of their address?

A Yes. That's one of the biggest problems that we have is -- is offenders not letting us know when they move or -- and that -- every time anybody registers, that's -- that's the most important thing, because that's what happens the most that we see.

Q Are you able to explain to them if they move, when they need to notify you, and what they need to notify you of as far as any -- any new address?

A Yes. At that time, it was ten days that they had to report their address. If they moved or changed residents [sic] ten days past, they needed to let us know before that ten days was up.

In October 2007, Detective Miller received a call from the manager of a trailer park located at 805 Topsy Road who stated Defendant was seen at the trailer park and had offered children a ride on a four-wheeler. The manager further informed Detective Miller that Defendant's brother, Gerald Bergeron, lived at lot forty, and Defendant might be living with him. Detective Miller went to the trailer park and spoke with Gerald. Gerald informed Detective Miller that Defendant was his brother, and, at that time, Defendant was in the hospital. Gerald further indicated Defendant had been living with him for two months. Detective Miller testified Defendant never provided him with paperwork showing he was living at 805 Topsy Road. Detective Miller also noticed the trailer park was located directly across from a school. Detective Miller testified that he asked Gerald to have Defendant contact him. Detective Miller further testified that Defendant called Deputy Poppy and indicated he had been living with his brother for several months.

2

Peggy Rousseau, the manager of Country Oaks Mobile Home Park, testified that she received complaints regarding Defendant. After discovering Defendant was a registered sex offender, she approached Defendant's brother and told him that Defendant was not allowed in the park. Gerald told Rousseau that Defendant had been living with him a couple of months, but he would have Defendant leave. Rousseau testified that she subsequently saw Defendant under Gerald's carport in boxer shorts working on a four-wheeler. Rousseau subsequently spoke to Gerald again, telling him Defendant had to leave the park. Rousseau reported the matter to the Calcasieu Parish Sheriff's Department.

Michael Broussard was previously employed by the Louisiana Department of Corrections, Division of Probation and Parole. He testified that he supervised Defendant for five years, and that supervision terminated on February 10, 2005. Broussard testified that he reviewed the sex offender registration forms with Defendant at the time he registered, and Defendant did not indicate he had any problem understanding the registration requirements. Broussard testified that the forms he used indicated that Defendant was required to register with the sheriff and state police within ten days of a change in residence.

The form signed and initialed by Defendant was admitted as State's Exhibit 4. The form states, in pertinent part: "Your registration time periods on subsequent *residence changes* will be applied consistent with policy and applicable law as applied to Louisiana case, i.e., _10 days_." (emphasis added). Defendant initialed next to this provision. The form further states:

> You must report all *changes in address* to the Louisiana State Police Bureau of Identification and Information in writing *within 10 days of the change*. This is in addition to your requirement, while under active supervision, to secure prior approval from your Probation and Parole Officer before changing your residence or employment. Failure to meet either one of these requirements represents a serious violation.

3

(emphasis added).

Defendant also initialed next to this provision. Defendant also signed the form after an acknowledgement that states, in pertinent part:

> I understand all of the above registration and notification requirements of Louisiana statutory criminal law which have been read, explained, and made applicable to me. I understand that my failure to comply with these registration and notification requirements as a sex offender may cause my probation and/or parole to be revoked. . . .
>
> . . . .
>
> I hereby acknowledge receipt of this Notice of Sex Offender Registration and Notification Requirements and acknowledge that my Probation and Parole Officer has thoroughly explained all of the registration and notification requirements that I must complete.

Gerald testified that Defendant lived with him between six and eight months during 2007 because Defendant had heart surgery and could not care for himself. Gerald testified Defendant reported that he was living with him to the proper authorities. Gerald testified that the residence on Dalton Road was uninhabitable.

Fingerprint evidence introduced indicated Defendant was the same person who had been arrested for sexual battery on April 27, 1999 and failed to register as a sex offender on June 10, 2008.

Based on the testimony and evidence presented, the trial court found Defendant guilty, stating:

> And while there, I guess, on the surface would appear to be a sort of excuse based on health issues, there wasn't any testimony that Mr. Bergeron was incapable of following the guidelines, which *I noted requires that he advise the authorities, even of any temporary residence, within ten days*, and he can do that by mail under 15:542(C)2(A), which is the 2007 version of the statute.
>
> Furthermore, he had his – his brother testified, and there was other testimony, about his Dalton Road residence not being livable, which means he was definitely in a -- had to be in another place, because his stated residence with the authorities was not a place that he could inhabit, and he knew that and his family knew that; so he was obligated to provide information about where he was living.

Residence is not domicile. He didn't have to express or prove an intent to leave Dalton Road. He had to advise the authorities of his residence. That's where he's residing. He didn't do that.

Gerald Bergeron testified that he lived six to eight months with him at the Topsy Road trailer park, and he only left there, because he was discovered by the manager. Even then, apparently, it took him a month and a half to finally leave, so he's – he's -- he clearly violated the statute.

Medical conditions aren't a – aren't a defense. Knowledge of what he's supposed to know or maybe not understanding what he was supposed to be doing isn't a defense, especially when we have a lot of evidence in the case about the repeated notices given to him about his legal obligations when he received his probation on these very serious charges back in 2002, let's see, when he pled guilty --

In brief to this court, Defendant cites *State v. Molineux*, 11-275, pp. 5-10 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, 620-23, *writ denied*, 11-2556 (La. 3/30/12), 85 So.3d 117, wherein the fourth circuit stated the following:

The defendant argues that the statute violates his due process rights under both the United States and Louisiana Constitutions because he did not have knowledge that he had an obligation to register under the statute. The defendant relies upon the United States Supreme Court's decision in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), in support of his argument. In *Lambert*, the Court found that the registration provisions for a felon registration ordinance violated a person's due process rights when it was applied to a person who had no actual knowledge of the duty to register. Several state courts have relied upon *Lambert* in finding that before an offender may be held criminally liable for failing to register, the state must prove that he was aware of a registration requirement. *See State v. Giorgetti*, 868 So.2d 512 (Fla.2004).

Defendant asserts that his conviction for failure to register as a sex offender is a violation of his due process rights since he believed he had satisfied his annual registration requirement, and he was not notified of the need to further inform authorities that he was temporarily staying with his brother. Defendant contends that when he reported his address to Detective Miller in 2007, he satisfied his annual registration requirements.

5

Defendant points out that when he first registered in February 2000, the notice form required that sex offenders report all changes in address within ten days of the change. Defendant contends that in its ruling, the trial court cited the portion of the statue that required sex offenders to advise authorities of "any temporary residence" within ten days. Defendant asserts the sex offender registration requirements were amended in 2005 to mandate that sex offenders notify authorities of temporary residences. However, nothing in the record indicated that he was aware of the requirements to report temporary residences. Defendant asserts that neither the form he signed in 2000 nor the one he signed in 2007, informed him that he was required to report this information. Additionally, Detective Miller did not testify that he informed Defendant of this requirement.

The State contends Defendant cannot prove a defense under the provisions of La.R.S. 14:17, which provides:

> Ignorance of the provision of this Code or of any criminal statute is not a defense to any criminal prosecution. However, mistake of law which results in the lack of an intention that consequences which are criminal shall follow, is a defense to a criminal prosecution under the following circumstances:
>
> (1) Where the offender reasonably relied on the act of the legislature in repealing an existing criminal provision, or in otherwise purporting to make the offender's conduct lawful; or
>
> (2) Where the offender reasonably relied on a final judgment of a competent court of last resort that a provision making the conduct in question criminal was unconstitutional.

The State further argues that *Molineux* and *Lambert* provide Defendant no relief because he cannot claim total ignorance of the sex offender registration requirements. The State notes that Defendant's brother testified that Defendant was aware that he needed to update his registration, and Detective Miller and Broussard informed Defendant of the change in address requirements. The State

6

avers that a temporary residence is not a residence where an individual lives for six to eight months.

The case at bar is distinguishable from both *Molineux* and *Lambert*, as both cases dealt with a claim by the defendant that he was not informed that he was required to register. However, just like the defendant in *Molineux*, Defendant in this case had notice of the registration requirement of which he complains.

Regardless of the various amendments to the sex offender registration and notification requirements, Defendant was advised in the "NOTICE OF SEX OFFENDER REGISTRATION AND NOTIFICATION REQUIRMENTS" form of the revised statutes that governed his registration and notification. Defendant was additionally informed that he must report all changes in address to the Louisiana State Police Bureau of Identification and Information in writing within ten days of the change. On February 14, 2000, Defendant initialed next to that provision and signed the acknowledgement portion of the form which indicated the probation officer had thoroughly explained all of the registration and notification requirements to him. Defendant was also advised that he would have to comply with the registration and notification requirements for either life or ten years after the date he was released from prison, placed on parole, supervised release, or probation.

Gerald testified that Defendant lived at his residence at Country Oaks Mobile Home Park for six to eight months. Defendant's decision to leave Country Aire Trailer Park and live at Gerald's residence constituted a change of address. There was no temporal limitation set out in the change of address portion of the notification and registration form signed by Defendant.

In the 2006 amendments to La.R.S. 15:541, the legislature defined "Residence" as "a dwelling where a sex offender regularly resides, regardless of

7

the number of days or nights spent there." *See* 2006 La. Acts No. 204, § 541.[1] This definition was in effect when Defendant updated his registration in February 2007, and would be applicable to him based on the supreme court's decision in *State v. Smith*, 10-1140 (La. 1/24/12), 84 So.3d 487. In *Smith*, the supreme court held that an increase in the number of years the defendant, who was convicted in June 1995 and registered in December 2006, was required to spend as a registered sex offender was not punishment. Additionally, the application of the sex offender statutes, as amended in 1999, 2006, 2007, and 2008, to the defendant did not constitute an infringement of the principles of *ex post facto*. Moreover, in *State ex rel. Counterman v. Whitley*, 611 So.2d 661, 666 (La.App. 1 Cir. 1992), the first circuit noted that "[p]romulgation of a law is deemed adequate notice."

Additionally, we note that in February 2007, Defendant provided Detective Miller with two addresses, one for the location he would be during the day and the other for the location he would be at night. This was indicative of Defendant's knowledge that authorities must be kept abreast of his whereabouts.

For the reasons asserted herein, Defendant's due process claim lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant contends the trial court's imposition of the maximum sentence was constitutionally excessive.

There was no objection to the sentence imposed, and no motion to reconsider was filed. We, therefore, agree with the State's assertion that Defendant's claim is barred or should be limited to a bare claim of excessiveness. *State v. Lewis*, 08-1308 (La.App. 3 Cir. 4/1/09), 16 So.3d 1.

---

[1] This provision has since been amended, and the definition is found in La.R.S. 15:541(22).

8

This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> The fifth circuit, in *Lisotta*, 726 So.2d at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:
>
> 1. The nature of the crime,
>
> 2. The nature and background of the offender, and
>
> 3. The sentence imposed for similar crimes by the same court and other courts.

Defendant was convicted of failure to register as a sex offender because he moved and failed to notify authorities of his new address and send out the required notice. The offense was punishable by a fine of not more than $1,000 and imprisonment at hard labor for not less than two nor more than ten years without benefit of probation, parole, of suspension of sentence. La.R.S. 15:542.1.4. Defendant was sentenced to serve the maximum term of incarceration.

The trial court stated the following at sentencing:

[T]he Court has no hesitation in imposing the maximum sentence on Mr. Bergeron based on the finding of guilty of failure to register as a

9

sex offender. The circumstances were blatant -- blatantly in violation of his obligation to register, and he – he went to a location where he knew he shouldn't have gone. He stayed there and caused trouble. He stayed longer even after being found by the manager.

He -- he acted inappropriately based on the testimony, but -- but primarily, he violated the statute. He knowingly violated it. He could have complied easily through the assistance of his brother or other people, and -- and he chose to go to the wrong location, and he knew it was the wrong location.

So I'm imposing the maximum without benefit of parole, suspension . . . .

We concur with the trial court's conclusion. We find no abuse of its wide discretion.

**DECREE**

Defendant's conviction and sentence are affirmed.

The trial court is directed to inform Defendant of the provisions of article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**CONVICTION AND SENTENCE AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-71

STATE OF LOUISIANA

VERSUS

CHARLES L. BERGERON

**THIBODEAUX, Chief Judge, concurring in part and dissenting in part.**

I concur in affirming the conviction of the defendant. I dissent, however, on affirming a ten-year sentence at hard labor without benefit of probation, parole, or suspension of sentence.

Maximum sentences are reserved for the worst offenders. While the defendant's conduct is unjustifiable, he does not fit into the characterization of a "worst offender." He has no prior conviction except molestation of a juvenile for which he registered as a sex offender. He registered in 2007 and resided temporarily with his brother because of a heart condition. The record is scant with respect to how and when the defendant "caused trouble" while staying with his brother. The record is equally tenuous on whether the defendant, as the trial court observed, offered children rides on a four-wheeler. While the majority recognizes the three factors we must consider in reviewing the trial court's sentencing discretion, it fails to perform a proportionality view, i.e., a comparison of sentences imposed for similar crimes by the same court or other courts. The majority simply rubberstamped the trial court's imposition of the maximum sentence in finding no abuse of the trial court's wide discretion. While the trial court admittedly has wide discretion, an appellate court's review must do more than simply defer to that wide discretion. It must, in my view, provide reasons for deference to that discretion. The majority opinion does not fully achieve this objective.

For the foregoing reasons, I respectfully dissent in part.